## NEW YORK COMMON PLEAS.

JEREMIAH CURUIS, GEORGE NEWMAN CURTIS and JEREMIAH WINSLOW CURTIS agt. JAMES BRYAN.

An injunction will issue to restrain a person from fraudulently using the *trade mark* of another person, or from imposing his goods on the public as those of the owner of the trade mark.

A person who in and by his trade mark makes representations which deceive the public, cannot appeal to the equitable interposition of the court to restrain others from using such deceptive mark.

A false statement in an *advertisement* of the manufactured article, when exposed for sale, by the owner of the trade mark, does not, however, affect the trade mark itself, or prove it to be false, unless the deception appears in the trade mark itself.

A person who has fraudulently imitated the trade mark of another, and manufactured and offered for sale his own goods as those of the owner of the trade mark, cannot be heard to raise the objection that the goods manufactured by the owner of the trade mark are injurious to health. The acts of the party conclude him.

*General Term, December,* 1867.

*Present,* DALY, *P. J.,* BRADY *and* VAN VORST, *Judges.*

APPEAL from an order denying a motion to dissolve an injunction.

HATCH & HINSDALE, *for defendant.*
JOHN SHERWOOD, *for plaintiff.*

*By the court,* VAN VORST, J. Previous to the year 1844, Mrs. Charlotte N. Winslow prepared a composition for children teething, which she used with success. In 1844 she gave the recipe to her son-in-law, Jeremiah Curtis, one of the plaintiffs in this action, who commenced its manufacture and sale under the name of "Mrs. Winslow's Soothing Syrup," and, with the approval of Mrs. Winslow, made that his trade mark. Afterwards Jeremiah Curtis associated with himself in business Benjamin A. Perkins. Curtis and Perkins, from and after the year 1845, prepared, manufactured and sold the preparation under the same name and trade mark. Before the year 1852, they used a wrapper and label

generally resembling that now in use. In 1852 they invented a wrapper which has been continued from that time to the present.

In the year 1855 Perkins retired from the co-partnership, and George Newman Curtis and Jeremiah W. Curtis, with the plaintiff, Jeremiah Curtis, became the proprietors of said article, title and name, and are the present proprietors of the recipe for the medicine and the trade mark.

The preparation is put up in glass bottles about five inches in length and one inch in diameter, with the words "Mrs. Winslow's Soothing Syrup" stamped on them. Each bottle has on it a label in English, French, German and Spanish, and is enclosed in a wrapper of yellow paper, with the government proprietary revenue stamp of the plaintiffs thereon. Each label has on it two vignettes and the words "Mrs. Winslow's Soothing Syrup, for childreen teething." The plaintiffs claim that this preparation is made of pure materials and with great care. They have made efforts during many years to introduce the preparation into general use in the United States and foreign countries. They have expended in such efforts, and in advertising, eight hundred thousand dollars, and have caused it to be generally known by its distinctive name. Plaintiffs claim that the sale of the article under its peculiar name and title have at all times steadily and rapidly increased, so that they sell over one million and a half bottles annually, and their annual receipts exceed $300,000. The preparation is well and favorably known in New York, and is purchased at wholesale by druggists, chemists and apothecaries. It appears by the evidence that the medicine has given satisfaction and has the reputation of being a safe and valuable preparation.

The defendant in this action, since the 1st day of January, 1867, has commenced the manufacture of a preparation in color and appearance resembling that of the plaintiffs, under the name of "Winslow's Soothing Syrup, for children teething." Defendant's mixture is put up in glass bottles of

nearly the same length and of the same diameter as those used by plaintiffs, with the words "Mrs. H. M. Winslow's Soothing Syrup" stamped upon them. The label on the defendant's bottle is of the same size, color and style of printing as that of the plaintiffs. The printing on the label is in the English, French, German and Spanish languages, and is in the same words as those on the plaintiffs' label. The bottle of the defendant is enclosed in a wrapper of paper, with a stamp thereon, having the general appearance and style of the revenue proprietary government stamp of the plaintiffs, and having figures resembling plaintiffs' engraved thereon. The defendant having thus prepared his article, has introduced same for sale and is selling same under the name of "Winslow's Soothing Syrup."

Except there be some legal justification for his acts, the defendant, under the well settled principles, as clearly and repeatedly announced by courts of equity, is infringing upon and invading the plaintiffs' rights. A trade mark is property, and the proprietor thereof should be fully protected in its enjoyment, and in all the benefits and advantages which it confers. It is well settled by the determination of the courts of this country, and the English law is the same, that a person may, by priority of appropriation of names, letters, signs, figures or symbols of any kind to distinguish his manufacture, acquire a property therein as a trade mark, for the invasion of which an action will lie, and in the exclusive use of which he may have protection by injunction. (*Amoskeag Manufacturing Company* agt. *Spear,* 2 *Sand. Sup. Ct. R.* 599.)

The defendant could have had but one object in so closely imitating the article prepared by plaintiffs. His use of a bottle similar in size and form, his use of the labels in the different languages and in the same words, the adoption of a stamp similar to that used by plaintiffs, and his selling his article under the name of "Winslow" or "Mrs. H. M. Winslow's Soothing Syrup," all clearly demonstrate that he

designed to take advantage of the reputation which the plaintiffs had by large expenditures of money and great and persistent efforts established for their article. It is quite evident that the defendant would seek to avail himself of and turn to his own account the labor and expense which the plaintiffs have borne for years to bring their article into favorable notice and general use. By the arts he used, defendant would have the public believe that the article he was selling was the plaintiffs', and he would dispose of it as such.

Courts of equity do not regard with favor such practices, and will restrain a party from indulging them. The direct consequences of the defendant's acts is to deceive, and a party is presumed to intend the consequences of his acts.

The imitation of the plaintiffs' trade mark is so close, and the manner in which defendants' article is put up so nearly resembles the plaintiffs' article and mark, that the law must presume it to have been resorted to for the purpose of inducing the public to believe the article is that of the plaintiffs, whose trade mark is imitated, and for the purpose of supplanting him in the good will of his business. (*Taylor* agt. *Carpenter*, 2 *Sand. Ch. R.* 611, 612; *Millington* agt. *Fox*, 3 *Myl. & C.* 338.)

In *Amoskeag Manufacturing Co.* agt. *Spear*, the court says: "An injunction ought to be granted whenever the design of a person who imitates a trade mark, his design either apparent or proved, is to impose his own goods upon the public as those of the owners of the mark, and the imitation is such that the success of the design is a *probable* or even a *possible* consequence."

But the case is relieved of all doubt as to the intention of the defendant in so preparing, putting up, marking and introducing his article. The proof shows clearly that defendant stated at the time, that the stamp he had placed on his bottle was intended to imitate the government stamp upon the plaintiffs' article, and that he intended to procure a govern-

Curtis agt. Bryan.

ment stamp like the one used by the plaintiffs, and that he also expected to sell his article on the demand made and the advertising done for "Mrs. Winslow's Soothing Syrup" by Jeremiah Curtis and sons. To justify the use by him of the name of "Winslow," in connection with the article introduced by him, the defendant claims that a variety of soothing syrups prior to 1843 called "Winslow Soothing Syrup for children," was manufactured, prepared, and sold by John M. Winslow, a druggist of the city of Rochester, and that printed circulars bearing the name of such medicine was extensively circulated through the northern states. The defendant avers in his answer that he purchased the formula of his remedy from John M. Winslow on the 20th of March, 1867, that John M. Winslow is the original and first manufacturer of a similar medicine bearing his name as originator. That as early as 1842 Winslow invented, and used his name in connection with, the medicine.

I am entirely satisfied that this claim of the defendant, under the proofs in the case, is wholly unfounded, and is fraudulently put forth. In support of his claim, the defendant distributed a circular signed by John M. Winslow, and purpor ing to be subscribed by the mayor and city attorney of Rochester, the county judge and district attorney of Monroe county, and by several druggists of the city of Rochester. In this circular, Winslow claims that he first put up the medicine, not in 1842, but in 1846, for his retail business, under the name of "Winslow's Soothing Syrup," and that he published circulars in reference to his preparation about that time. Now, in regard to this circular, the affidavits of the mayor of the city of Rochester, of the county judge, and also of the other parties who are claimed to have signed the paper, have been procured. They severally swear that they never authorized the use of their names to any such circular, and that such use is a fraud and imposition upon the public. And such of the alleged signers who are druggists also swear that the use of their names to such circular was unauthor-

ized. They say that they never. knew or heard, and do not believe, that Winslow ever had or sold an article of his own, or any other person's preparation, known as "Winslow's Soothing Syrup," except that of the plaintiffs, and that he did sell the plaintiffs' preparation, and no other, and never pretended to have any other. Joseph Wrigley, the partner of the defendant, also swears to facts which show that it was the intention of defendant to have bottles of the same size as plaintiffs', and that he was disappointed in their being a little longer, although the contents of the bottles are the same. That when defendant was about to put up his bottles in packages he sent for a package of. one dozen of plaintiffs' articles, defendant stating that he wished to see how the bottles of plaintiffs were put up in cases. That upon said packages being produced, defendant said that for the first time he had observed the government stamp on the top of the bottle of plaintiffs, and. that in order to have one resembling it, they must wait until they could have one engraved; and that they were compelled to wait two weeks for this purpose. Wrigley further swears that he became satisfied that the business on the part of defendant was a fraudulent attempt to imitate the article of plaintiffs, and to get the benefit of their advertising and of their reputation. That he made an unsuccessful effort to get back the capital he put in, and left the business. And finally, J. M. Winslow, himself, swears that the medicine called "Winslow's Soothing Syrup," mentioned in the circular, is an imitation of plaintiffs' article; that he has never obtained a copyright for it, as is pretended on the label; that he has and makes no claim to any medicine called "Winslow's Soothing Syrup," and has no right to manufacture or sell any such medicine. He states that he was induced to enter into an arrangement with Bryan & Co., of New York, for the manufacture of said article by defendant. That on behalf of himself and wife (Mrs. H. M. Winslow) he repudiates the same and the statements contained in the circular. Mrs. Harriet M. Winslow

also repudiates any connection with the defendant, and states that she has no right or interest in any such medicine, and forbids the use of her name by the defendant. The case thus presented, while it clearly establishes the priority of the plaintiffs' right to the use of the trade mark in question, also discloses the steps taken. by defendant to imitate the plaintiffs' article, and the measures he resorted to by fraudulent efforts to injure the plaintiffs in the enjoyment of their legal rights, and to deprive them of the fruits of their enterprise and capital.

The defendant in his answer sets up two other matters of defense to the plaintiffs' action.

The first, that the "*advertisement*" of the plaintiffs in respect to their medicines is · false. That in the notices which the plaintiffs have given in the public prints of their compound, they have made statements which are not true. There is no doubt of the principle that if a person in and by his *trade mark* makes representations which deceive the public, he cannot appeal to the equitable interposition of the courts in his behalf.

It was so decided in *Fetrich* agt. *Wells* (13 *How. Pr. R.* 385), which was a case in which the plaintiff endeavored to restrain the defendant from imitating and using his trade mark. The plaintiff was manufacturing and selling an article of liquid soap, compounded of palm oil, pot ash, alcohol and sugar, highly scented, under the name of "Balm of a Thousand Flowers." The name itself contained a falsehood, and was used to deceive the public. (*Florell* agt. *Harrison*, 19 *Eng. L. and Eq. R.* 15. But see *Holloway* agt. *Holloway*, 13 *Bea.* 213; *Stewart* agt. *Smithson*, 1 *Hilton*, 119.) But in all these cases the fraud appeared in the *trade mark* itself. I cannot understand how the right of a plaintiff to be protected in a trade mark adopted by him, if it contains in itself no false or fraudulent representation, is to be affected by advertisements of his article in the newspapers. The trade mark is one thing, the notices or commendations of his

medicines, when the inventor offers them for sale, is quite
another.    If the trade mark contained a false statement, and
the advertisements of the plaintiffs tended to establish it,
they might be used for that purpose; and except as it bore
on that question, it would not answer to determine the right
of a plaintiff to protection in his trade mark by the standard
of credit allowed to an advertisement of the qualities of the
article.

The advertisement particularly criticised is in these words:
"Mrs. Winslow, an experienced nurse and female physician,
presents to the attention of mothers her soothing syrup."
The objection is that the advertisement holds out the idea
that Mrs. Winslow is still living, and herself offers the medi-
cine; whereas the truth is that she has been for many years
dead.    And furthermore, the defendant denies that she was
in her lifetime an experienced nurse and female physician.
Neither of these statements, whether true or false, affect the
trade mark one way or the other.    If they are not true, they
do not impeach or throw any discredit upon it.    But with
respect to the advertisement itself, while it is not literally
true that Mrs. Winslow presents the medicine herself, still
the fact is that she did in her lifetime prepare the formula
for the preparation, and did reduce it to practical use, and
did transfer the same to her son-in-law Jeremiah Curtis, and
did acquiesce in and adopt the use by him of her name in
connection with the mixture, and her name properly indi-
cates its true origin.    The names of the plaintiffs, as the
present proprietors of the article, are plainly princed on each
package, which clearly avoids all appearance of deception.

The case does show clearly that Mrs. Winslow was an
experienced nurse; that she was skilled in the cure of dis-
eases of women and children, and that she acted in and con-
ducted a certain class of cases herself as a female physician.

The other defense interposed by the defendant is that the
medicine is not what by the advertisement it purports to be;
that it is not perfectly safe or harmless, but on the other

Curtis agt. Bryan

hand, it contains ingredients which are injurious and baneful to children.

It is difficult to conceive upon what principle of equity this defendant should be heard to raise this objection. His own conduct in regard to the subject matter is an unequivocal concession to the goodness and value of the plaintiffs' article. He interposes this objection to avoid an injunction which restrains him from imitating the plaintiffs' article. After the plaintiffs' preparation had been in use for nearly twenty-five years, its sale having steadily increased during all that time, the defendant appears and places upon the market an article which, by the practices and arts to which he has had recourse, he would have the public purchase as the plaintiffs' article.

If the article was not a good one, why should the defendant imitate it? If it was injurious to health, it is not reasonable to suppose that a prudent man would venture to introduce a similar article under the same name and hope to succeed.

The defendant has not supported his charge by any proof or chemical analysis of the compound by any expert. On the other hand, the plaintiffs say that the composition of their article is a valuable secret, which they possess and intend to preserve. They deny that the composition of the article is truly set forth by the defendant. They aver that it is made of pure materials and is carefully prepared. Plaintiffs have also produced affidavits of thirty druggists and apothecaries of the city of New York, and several persons from other places, who have been engaged in the sale of plaintiffs' medicines for many years past, some of them as long as fifteen years, and they concur in stating that the plaintiffs' preparation has been well and favorably known in the drug trade during all the time in which they have been engaged in selling it; that it has given universal satisfaction to the public, and has a very high reputation as a safe and and valuable medicine.

Experience is an excellent teacher, and the fair trial of an article will furnish unerring evidence of its worthlessness or value. It is obviously true that, if a medicine can stand the test of twenty years of experimental use, and grow steadily and constantly in favor, its properties cannot be injurious. But as before observed, the good faith of this defendant in raising the objection may reasonably be questioned, and I am satisfied that it does not lie in his mouth to make it. If a man's acts are any indication of his belief on any subject, the conduct and admissions of the defendant constitute a complete refutation to this objection. A man's faith is shown by his works.

The defendant is now properly restrained from using or interfering with the plaintiffs' trade mark. The order of Judge BRADY, denying the motion to dissolve the injunction, from which this appeal is taken, is affirmed, with costs.