## THE AMERICAN BREWING COMPANY, Appellant, v. THE ST. LOUIS BREWING COMPANY, Respondent.

### St. Louis Court of Appeals, November 24, 1891.

**1.** **Fraudulent Imitation of Signs Used to Advertise a Business.** Even where there may be no exclusive right to the use of a word, such as "American," as a trademark, a person who uses signs and devices, containing the word, for the purpose of advertising the sale of goods of his manufacture will be entitled to protection against the fraudulent imitation of such signs and devices by others for the purpose of representing their goods as those of his manufacture; and, when the fraudulent interference is apparent, the devices adopted for this purpose are immaterial.

**2.** ———. And, it appearing in the case at bar that defendant had intentionally used signs in imitation of those theretofore adopted by the plaintiff, and had done so for the purpose of advertising beer brewed by it as the product of the plaintiff's brewery, and that the imitation was sufficiently close to deceive the public, it was *held* that the plaintiff was entitled to have the further use of such signs by the defendant enjoined.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED (*with directions*).

*Lubke & Muench*, for appellant.

(1) While it is true, as a rule, a geographical name cannot be so far appropriated as a trade-name by one person, as to prohibit other dealers or manufacturers in the same locality from selling their ware as coming from such locality, yet such inhibition applies only to the use of the name of the place where manufactured. The name of any other locality may properly become the subject of a trademark. *Sanders v. Utt*, 16 Mo. App. 322. And the rule suffers further exception when the word adopted distinctly points to the origin

or ownership of the article to which it is applied. *Dunbar v. Glenn.* 42 Wis. 118. The rule against proprietary right in geographical names can likewise not be invoked, when the descriptive word is adopted by the infringer, not so much to indicate the place of manufacturing his ware, as to encroach upon the previous use and popularity of another's trademark. *Lea v. Wolff*, 1 Am. L. T. ( N. S. ) 400. ( 2 ) Independently of the question of proprietary right to the use of the word "American," plaintiff was and is entitled to an injunction restraining the defendant from the fraudulent imitation of the canvas-signs introduced and used by plaintiff. The similitude is obvious upon mere inspection, and, where this occurs, courts of equity will protect both the complaining party and the public against the fraud. *Kinney v. Basch*, 16 Am. L. Reg. ( N. S.) 596 ; *Mfg. Co. v. Wilson*, No. 477, Cox's Man.; *McLean v. Fleming*, 96 U. S. 251 ; *Fish Co. v. Wooster*, 28 Mo. App. 408; *Liggett, etc., Co. v. Tobacco Co.*, 104 Mo. 53. The fact of imitation, with danger of deception, is the sole criterion ; not whether the spurious article is really of inferior quality. To hold otherwise would be to multiply issues, and make the cause turn upon an immaterial proposition.

*Kehr & Tittman*, for respondent.

( 1 ) Appellant cannot claim an exclusive or proprietary right to the use of the words "American" or "beer" or "American beer." A generic or geographical name—one which merely designates the city, district or country where an article is manufactured or otherwise produced—or a name merely descriptive of an article of trade or commerce and which can, with truth, be employed by other manufacturers, is not subject to legal protection as a trademark, and cannot otherwise receive protection in a court of equity. *Canal Co. v. Clark*, 80 U. S. 327 ; *Iron Co. v. Uhler*, 75 Pa. St. 471; *Eggers v. Hink*,

63 Cal. 445 ; *Candee, Swan & Co. v. Deere & Co.*, 54 Ill. 439 ; *Lead Co. v. Masury*, 25 Barb. 416 ; *Koehler v. Sanders*, 25 N. E. Rep. 235 ; *Brewing Co. v. Piza*, 24 Fed. Rep. 149 ; *Fish Co. v. Wooster*, 28 Mo. App. 408 ; *Snodgrass v. Welle*, 11 Mo. App. 590 ; Sebastian on Trademarks, pp. 50, 51, 52, 56, 66, 315, 482. (2) Appellant could not, even with the view of indicating the origin or ownership of its goods, appropriate to itself any name, sign or symbol, which, from the nature of the fact it is used to signify, others may employ with equal truth. There must be an imitation of something that can legally be appropriated. *Mfg. Co. v. Trainer*, 101 U. S. 54 ; *Canal Co. v. Clark*, 80 U. S. 324 ; *Morgan's Son Co. v. Troxell*, 89 N. Y. 292. (3) Even if appellant could obtain a proprietary right to the use of the words " American beer," it could only do so by showing that the words were used in connection and became identified with the sale of its product. It can obtain no rights in a name as a name merely. *Rowley v. Houghton*, 2 Brewster, 307 ; *Colladay v. Baird*, 4 Phil. Rep. 139. (4) There is not such similitude between the appellant's and respondent's signs, as would mislead purchasers. Courts of equity will not interfere when, by ordinary attention, customers can discriminate between the two signs. *Ball v. Seigel*, 116 Ill. 146 ; *Rowley v. Houghton, supra ; Colladay v. Baird, supra ; Partridge v. Menck*, 2 Sandf. Ch. 622 ; *Gilman v. Hunnewell*, 122 Mass. 139 ; *McCartney v. Garnhart*, 45 Mo. 593 ; *Mfg. Co. v. Travis*, 101 U. S. 51 ; *Popham v. Cole*, 66 N. Y. 69.

ROMBAUER, P. J. — Both the plaintiff and the defendant are corporations engaged in brewing beer and selling it in the city of St. Louis and elsewhere. In advertising its beer at the places where the same was being sold at retail within the city, the plaintiff used certain large canvas or muslin signs, in which the word "American" was conspicuously displayed. Shortly

after the plaintiff begun this mode of advertising, the defendant hung over some of the places, where its beer was sold at retail canvas or muslin signs of the same size and general appearance as those of plaintiff, on which the word "American" was likewise conspicuously displayed. The plaintiff thereupon filed its bill in equity, claiming that the defendant's acts above stated were done for the purpose of defrauding the public and defeating plaintiff's rights, which bill concluded as follows :

"That, by reason of the close similitude between the signs and trademark, adopted and used by plaintiff as aforesaid, and the ones so fraudulently used in imitation thereof by defendant, the public has been and is necessarily and intentionally deceived into purchasing the inferior product of defendant, wherever such signs or placards are displayed, in the belief that such product is that of plaintiff, thus drawing trade away from plaintiff and its customers and greatly depreciating the reputation and salability of plaintiff's superior brew, to the great and irreparable injury and damage of plaintiff.

"Wherefore plaintiff says that, by the wrongful acts of defendant, herein complained of, it has been damaged in a large sum of money, and it prays that the defendant, its officers, agents and employes may be enjoined and restrained from further using the name "American" in the sale of its beer or brew in and about said city of St. Louis, and from erecting, displaying or using signs or placards of plaintiff as aforesaid, and that, upon final hearing, such restraining order be made perpetual ; that the defendant be required to account to plaintiff for all profits which defendant may have made on its fraudulent piracy of plaintiff's name, trademark and sign, and which, but for defendant's wrongful act, the plaintiff would have made, for damages, costs, *and such other and further relief as to the court shall seem meet and proper in the premises.*"

The defendant answered by way of general denial, and upon the hearing such proceedings were had, that the court refused to grant the plaintiff *any relief*, and dismissed its bill. The error complained of is this action of the trial court.

The evidence adduced showed the following facts: The plaintiff was incorporated in the fall of 1890, under the corporate name of American Brewing Company, and thereafter erected an extensive brewery, which was completed late in that year. At the close of the month of February, 1891, the plaintiff, being then ready to begin the sale of its beer, caused a number of large white muslin signs to be prepared, and caused the same to be fastened above the doors of its customers. These muslin signs contained the words "The American Brewing Co. Beer" in black paint, prominence being given to the word *American*, in size of lettering. Each of said signs also contained the emblem adopted by the plaintiff, which is an eagle. Within a few days thereafter the defendant caused to be prepared similar muslin signs, of the same general appearance as to size and lettering; and within a week it caused the same to be fastened in the same manner over the doors of its customers. These signs contained the words "The Only American Cherokee Beer" in black paint, the same prominence being being given to the word "American" in size of lettering as upon the plaintiff's signs. Each of said signs also contained the emblem adopted by one of defendant's breweries, which is a standing Indian. Photographs, showing the manner in which these signs were respectively fastened over the doors of plaintiff's and defendant's customers, were produced upon the trial, and are before us for inspection. One of the plaintiff's and one of the defendant's muslin signs were also produced upon the trial, and are before us for inspection. The evidence showed that such muslin signs are unusual. The plaintiff's president testified he that had never seen one in the city before. The defendant's foreman testified that the

word American had never been used in connection with the defendant's beer on any of its signs before that time. There was no direct evidence that any of the patrons of plaintiff's beer or any part of the public were actually misled by the resemblance of one sign to the other, nor was there any evidence that the plaintiff's beer was a superior article to that of defendant ; and the absence of evidence on these two points seems to have mainly determined the trial court's action in dismissing the bill.

It was also shown that, immediately after discovering the muslin signs made by the defendant, the plaintiff gave written notice to the defendant claiming that the lettering on these signs was an infringement of its trademark rights, and requesting that they be at once removed ; that the defendant paid no attention to the notice, but continued to use the signs for several months thereafter, although the signs were removed prior to the trial of the cause. The defendant was represented upon the trial, but declined to offer any evidence.

The case is argued by both parties as if it were one governed strictly by the rules applicable to trademarks, trade-names or trade-labels. The defendant contends that the plaintiff could not acquire a proprietary interest in the word "American" for its beer, against any other person who manufactured beer in America, nor could it acquire any exclusive right against anyone to use muslin signs, or to paint upon such signs black letters of a certain size in advertising the sale of its wares. The defendant further contends that, where no right exists in a claimant, there can be no interference which would entitle the claimant to equitable protection. This argument, when applied to the facts of this case, is more plausible than sound. The plaintiff's right consists in being protected from dishonest competition, in preventing another from representing his manufacture for that of the plaintiff, and, when the fraudulent interference is made apparent, the devices adopted for the purpose are immaterial. Every person has a right to

his own name in designating his own manufacture, yet the use of a person's own name, when applied to his own manufacture with intent to deceive, may be restrained. *McLean v. Fleming*, 96 U. S. 245. In commenting on *Curtis v. Bryan*, 2 Daly, 312, a careful author says: "The right of the plaintiff to the remedy did not depend upon the fact that the words mentioned constituted a valid trademark. Anybody named Winslow had a right to make and vend soothing syrup, and to combine his name with the generic term, *if the sale thereof were not attended by circumstances of fraud or deceit.*" Browne on Trademarks, sec. 201. And in commenting on the case of *Howe v. Machine Co..* 50 Barb. 236, the same author says: "All had the right to use the name 'Howe.' Therefore, that name was not a trademark. Yet, although not technically such, under circumstances of fraudulent usurpation, the infringement of it would be restrained, *as would any other act of unlawful competition.*" Browne on Trademarks, sec. 202.

The distinction thus taken is clearly correct. As we had occasion to say in *Plant Seed Co. v. Seed Co.*, 23 Mo. App. 579: "An act done with a fraudulent motive and inflicting damage upon another is never a lawful act." The remark of Judge STRONG in *Canal Co. v. Clark*, 80 U. S. 327, "equity will not enjoin against telling the truth," must be limited to cases where the truth is honestly told, and can have no application to a case where it is told with intent to deceive and does deceive. The manner of asserting a literal truth may be such as to render it more deceptive than the assertion of something that is wholly false.

The correct decision of the case at bar depends on the finding of two propositions: Was the imitation of the plaintiff's signs by defendant merely the result of an accident, or was it the result of a preconceived design to mislead the public into the belief, that plaintiff's beer was being sold at the defendant's places of

business? Was the imitation of the signs close enough to bring about such a deception? The evidence is clear that muslin signs of that character are unusual, and that the defendant never used them before. There was an obvious reason for plaintiff's adoption of them, because it had just started the sale of its beer at retail in a very large number of places, for which muslin signs could be provided on short notice, whereas it might take considerable time to provide others. There was no obvious reason for the adoption of them by defendant, since it merely continued at its places of business to sell its beer, known under the same name as theretofore, and such places were presumably amply provided with other signs. The similarity of the signs, the great prominence given to the word "American" in each, the close resemblance in size, color and lettering, all indicate design. The plaintiff thus gave evidence from which the inference of a fraudulent design might fairly be made, yet the defendant adduces no evidence whatever to rebut such inference. Under this state of the evidence we are warranted in finding, and do find, that the construction and hanging of the defendant's muslin signs, in close imitation of those of the plaintiff, was the result of a design on defendant's part to attempt a deception of the public to plaintiff's prejudice.

On the second proposition we find by actual inspection of the two signs that the colorable imitation is close enough to work such a deception. The rule stated in *Rawlins v. Rawlins*, 102 Mo. 563, and which the defendant now invokes in support of the judgment, namely, that the finding of facts by the trial court even in equity cases should not be disturbed, unless manifestly wrong, can have no application to a case, where a question has to be determined by inspection, and where the opportunities of inspection of the trial court and appellate court are the same. The finding of a fraudulent design must in itself, to some extent at least, influence the finding of the court as to the similarity of the imitation, because whenever the similarity

is such as may probably deceive, it comes with ill grace from the defendant to say that he intended to deceive but failed, because the resemblance was not close enough. If either party is entitled to the benefit of a presumption in the case above stated, it is the plaintiff and not the defendant. *Edelsten v. Vick*, 11 Hare, 78.

Owing to the fact that the defendant has discontinued the use of muslin signs in imitation of those of the plaintiff, the only practical question in the case is that of costs, and the prevention of the recurrence of similar attempts on the part of the defendant. To that extent the plaintiff is entitled to relief under its prayer for other and further relief, although we find it is not entitled to the specific relief prayed for, to restrain the defendant's use of the word "American" on its signs.

The judgment is reversed and the cause remanded to the trial court with directions to enter a decree in favor of the plaintiff, restraining the defendant from using over its places of business muslin or canvas signs, in colorable imitation of those used by the plaintiff and described in its petition. All the judges concur.