## HOUSEHOLD FINANCE CORPORATION OF DELAWARE v. HOUSEHOLD FINANCE CORPORATION OF WEST VIRGINIA.

### No. 170.

District Court, N. D. West Virginia.
May 24, 1935.

4

O'Brien & O'Brien, of Wheeling, W. Va., and Ballard Moore and John A. Marzall (of Cox & Moore), both of Chicago, Ill., for plaintiff.

Schmidt, Hugus & Laas and Ewing & McGinley, all of Wheeling, W. Va., for defendant.

BAKER, District Judge.

The subject-matter of the controversy is the adoption by the defendant of the exact same name as that of the plaintiff. Plaintiff objects to the defendant using its name, on the grounds that the public will become misled; that confusion will exist in the mind of the public; that plaintiff's stock value is likely to depreciate; that plaintiff's banking connections and stock have been and are still endangered; and that plaintiff's credit, business, borrowing power, and stock valuation will diminish by reason of defendant's acts, and that the plaintiff is being damaged by the defendant's use of its name, and that if defendant is not enjoined from continuing the use of its present name, the plaintiff will suffer irreparable loss and damage.

Plaintiff, Household Finance Corporation, is a corporation organized and existing under and by virtue of the laws of the state of Delaware, and has an office and place of business at 919 North Michigan avenue, Chicago, Ill.

Defendant, Household Finance Corporation, is a corporation organized and existing under and by virtue of the laws of the state of West Virginia. The defendant corporation originally was incorporated under and by virtue of the laws

of the state of West Virginia, on the 1st day of December, 1922, under the name "Commercial Finance Company." Defendant, on March 5, 1931, changed its name from "Commercial Finance Company" to "Household Finance Corporation," the exact same name as that used by plaintiff.

Plaintiff's record in this case shows that plaintiff acquired its name through predecessor organizations, by purchase, merger, or otherwise; that the business was originally established by one Frank J. Mackey in the year 1881, with the opening of a small loan office in Minneapolis, Minn.; that the business of said Mackey expanded, and that about 1892 the word "Household" was first used in Milwaukee, Wis., as part of the name under which one of the predecessor officers operated.

Through the adoption of the predecessor organization by purchase, merger, or otherwise, plaintiff claims the dominant right to use the word "Household" in connection with the loan and finance business. Furthermore, plaintiff shows it has spent thousands and thousands of dollars in advertising the words "Household," "Household Finance," and the name "Household Finance Corporation," until this name has become synonymous with plaintiff's business.

Plaintiff further owns, operates, and controls three subsidiaries under the following names: "Household Finance Corporation of New York, a personal loan company," "Household Finance Corporation of America," and "Household Finance Corporation of Massachusetts."

The record shows that plaintiff's business, originally established by Frank J. Mackey in 1881, grew from a relatively small concern, until at the time of its incorporation in 1925, it had net assets of $5,000,000, not including an exceedingly good will. By September 1st of the same year of plaintiff's incorporation, its net assets grew to $6,000,000, and the plaintiff has expanded rapidly and continuously to such an extent that its net assets, at the time when defendant changed its name to that of the plaintiff, were over $24,000,000, not including good will. The net assets of plaintiff, at the time of filing the bill of complaint in this case, were over $29,000,-000.

Plaintiff has offices in approximately 76 cities and towns in the United States, and conducted an advertising program over the radio which was heard in practically every state of the United States, and some foreign countries. Plaintiff regularly advertises in local newspapers and other publications, including "Time," "Christian Science Monitor," "Fortune," "American Federationist," "Rotarian," "American Bankers' Association Journal," "Saturday Evening Post," and others.

Plaintiff has spent, and is still spending, large sums of money in advertising, both in national and local periodicals.

Plaintiff maintains an office in Pittsburgh, Pa., about 60 miles from Wheeling, W. Va., and is licensed to do business in several states bordering West Virginia.

Defendant is located in Wheeling, W. Va., scarcely a mile away from the state of Pennsylvania, where plaintiff has several offices.

Plaintiff is not endeavoring to put defendant out of business, but is merely trying to prevent defendant from continuing to use plaintiff's name, which plaintiff alleges it has spent many thousands of dollars to make known to the public.

Nims on Unfair Competition and Trade Marks (2d Ed.) p. 163, § 82, states that the fact that the defendant corporation in a suit for unfair competition, involving its name, has been chartered by some state government, does not afford it a defense or immunity from action against it in a federal court or a state court by a corporation of another state, where the name adopted is used to compete unfairly with the complaining company.

Cook on Corporations, vol. 1 (8th Ed.) page 84, § 15, reads as follows: "The right of a corporation to the exclusive use of its chosen name is recognized by statute in many states. Moreover, it is usually protected by the courts, independently of any statute. The matter of protecting the use of a corporate name is intrinsically of equitable cognizance, and the injured party seldom, if ever, has an adequate and complete remedy at law. To prevent the continuance of such a wrong, equity will interfere, and at the suit of the injured party, will grant an injunction."

In General Film Co. of Missouri v. General Film Co. of Maine, 237 F. 64,

Circuit Court of Appeals, Eighth Circuit, the court held as follows: "As a corporation adopts its own name, complainant could not, though the name of the foreign corporation had not been registered, obtain the right to use the name of such corporation for the purposes of unfair competition, and such use may be enjoined by the courts, notwithstanding the approval of complainant's name by the secretary of state."

When a state grants a charter to a corporation in accordance with the name selected by the corporation, the state does not warrant the name, nor does it guarantee that the domestic corporation shall have the full right and privilege to that name, regardless of any previous existing right to another.

In Liberty Life Assurance Society v. Heralds of Liberty, Delaware (15 Del. Ch. 369), 138 A. 634, it was held that the general right conferred by the law of a state to choose any corporate name must be held to those considerations of justice and fair dealing which it is the special province of equity to promote and protect, hence the courts of a state will not permit a business to be carried on in a manner unfair to a corporation of another state or in a name which unjustly interferes with the business of such a corporation, although the same may have been organized and registered under the general laws of the state.

The Fourth Circuit Court of Appeals in Grand Lodge, I. B. & P. O. O. Elks v. Grand Lodge, I. B. & P. O. O. Elks (C. C. A.) 50 F.(2d) 860, 861, stated:

"This suit was instituted in the court below by the Grand Lodge of Improved Benevolent and Protective Order of Elks of the World, a New Jersey corporation, against the Grand Lodge, Improved, Benevolent and Protective Order of Elks of the World, a corporation of Virginia, and James T. Carter, Leon A. Reid, Joseph R. Pollard, and John B. Neblett, citizens of that state. The purpose of the suit was to enjoin defendants from using the corporate name of complainant. * * *

"The individual defendants are citizens of Virginia, and the corporate defendant is a corporation organized under the laws of (that) state in the year 1929. * * *

"'The principles upon which these cases rest are, that although a corporation may be legally created, it can no more use its corporate name in violation of the rights of others than the individual can use his name, legally acquired, so as to mislead the public and to injure another. The principle adopted is similar to that of a trade-name or trade-mark, and is applied accordingly. Consequently a court of equity has jurisdiction in such a case without the intervention of the state.'"

Plaintiff has shown that actual confusion existed, but it is a well-known law of trade-marks and unfair competition that, "in order to make out a case of unfair competition, it is not necessary to show that any person has been actually deceived by the defendant's conduct and led to purchase his goods in the belief that they are the goods of the plaintiff, or to deal with the defendant, thinking he was dealing with the plaintiff. It is sufficient to show that such deception would be the natural and probable result of the defendant's acts." 38 Cyc. 766–782, § 4.

Nims on Unfair Competition and Trade-Marks (3d Ed.) § 11, reads as follows: "The sum of the whole matter is this: If a plaintiff can demonstrate that the defendant's use of its corporate name is likely to cause confusion or to misrepresent, the defendant must change its name, even though it contains the personal name of an incorporator, and inasmuch as an affirmative duty to differentiate itself from the plaintiff rests upon defendant, the failure so to do is evidence of fraud."

For other cases in point showing that actual confusion is not necessary, and that probable confusion is sufficient, see Rubber & Celluloid Harness Trimming Co. v. F. W. Devoe & C. T. Reynolds Co. (D. C.) 233 F. 150; Wisconsin Electric Co. v. Dumore Co. (C. C. A.) 35 F.(2d) 555, at page 558, citing Bickmore Gall Cure Co. v. Karns (C. C. A.) 134 F. 833, 835; Ralston Purina Co. v. Western Grain Co., 23 F.(2d) 253, 255 (5th C. C. A.).

Courts of equity have found another and broader ground upon which protection can be rested, namely, the right to protection against unfair competition. In fact, the law of trade-marks is but a part of the broader law of unfair competition, the general purpose of which is to prevent one person from passing

off his goods or his business as the goods or business of another. Unfair competition in trade, as distinguished from infringement of a trade-mark, does not involve the violation of any exclusive right to the use of the name. Even the term "unfair competition," if strictly interpreted, is not sufficiently comprehensive to embrace all the situations in which relief will be granted. For the statute may prohibit the assumption of a corporate name so similar to that of an existing company as to lead to confusion without regard as to whether unfair competition will result.

The principle of the cases upon the subject of preventing a corporation, association, or an individual from using the name of a corporation previously appropriated and used by it, proceeds upon the theory that it is a fraud on the corporation which has acquired a right to that name and perhaps carried on its business thereunder, that another should attempt to use the same name, or the same name with a slight variation in such a way as to induce persons to deal with it in the belief that they are dealing with the corporation which has given a reputation to the name. The injury guarded against is twofold: (1) Injury to the public by having palmed off upon it a spurious article believing it to be the product of the complaining corporation, and (2) injury to such corporation by having its trade diverted to the newcomer. By some courts, the latter element is accentuated, and injury to or fraud upon the complainant is made the crucial test. The ultimate question is whether the public or some portion of the public is being cheated or deceived or led into the purchase of something which it is not getting, and whether trade is being unfairly diverted. A corporation will not be permitted to deceive the public by any artifice that will enable it to be passed off as another corporation already in existence, or to dispose of its products as those of such other company. Primarily it is not the name which is protected, but the business.

Although, in a proper case, an action for damages will lie against the offending corporation, association, or individual, the matter of protection is essentially of equitable cognizance, because of the fact that the remedy at law would ordinarily be inadequate or incomplete. As a general proposition, equity, at the suit of a corporation which has adopted a certain name and upon proof of the necessary facts, will enjoin a corporation, subsequently organized, which has adopted an identical or a similar name, from using such name. Fletcher, Cyclopedia Corporations, vol. 6, pp. 21–32, and §§ 2422, 2423, and 2424; 36 A. L. R. 923; Edward Rogers on Goodwill, Trademarks and Unfair Trading, pp. 159, 160; Ruling Case Law, vol. 7, pp. 132–136.

There can be no question as to the jurisdiction of this court, because the bill of complaint contains a certified copy of the plaintiff's articles of incorporation showing that plaintiff was incorporated under the laws of the state of Delaware. Defendant admits it is a corporation organized under the laws of the state of West Virginia. Diversity of citizenship, therefore, exists. The bill of complaint seeks an injunction; therefore, equity has jurisdiction. The amount of the controversy is the value of the thing to be protected, plaintiff's good will. It is alleged in the bill of complaint, and it has been shown to the court, that plaintiff's good will amounts to several million dollars. Hennessy et al. v. Herrmann et al. (C. C.) 89 F. 669; Sun-Maid Raisin Growers of California v. Avis et al. (D. C.) 25 F.(2d) 303, at page 305; Randall v. Becton-Dickinson Co. (D. C.) 18 F.(2d) 631; Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U. S. 121, 36 S. Ct. 30, 60 L. Ed. 174.

### Conclusion.

First, that the plaintiff, "Household Finance Corporation," a corporation organized and existing under and by virtue of the laws of the state of Delaware, is the first to have used the words "Household," "Household Finance," and the name "Household Finance Corporation"; the plaintiff having established proof that such words and names were used continuously by it or its predecessors since approximately 1881.

Second, that the plaintiff herein is entitled to the sole and exclusive use of the words "Household," "Household Finance," and the name "Household Finance Corporation," in its line of business.

Third, that the defendant has unfairly appropriated plaintiff's name, and has, therefore, unfairly conducted its business by so appropriating plaintiff's name.

Fourth, that the appropriation of a name similar to that of the plaintiff is liable to cause confusion in the mind of the public generally.

Also that the defendant be restrained:

(1) From advertising, using, publishing, or listing the word "Household" in connection with the loan or finance business, or the words "Household Finance," or the name "Household Finance Corporation."

(2) From in any way or manner conducting a loan or finance business under the name "Household Finance Corporation."

(3) From in any way or manner conducting a loan or finance business under any colorable combination or simulation of said name "Household Finance Corporation."

(4) From using any words or name having a near resemblance to plaintiff's name which may be calculated to deceive.

(5) From committing any other acts of unfair competition.

The plaintiff having established its right by the law, evidence, and the record, it is entitled to a preliminary injunction.

Decree may be prepared accordingly.