## WESTERN AUTO SUPPLY CO. v. WESTERN AUTO SUPPLY CO.

District Court, D. New Hampshire.

Jan. 29, 1936.

Ralph Davis, of McLane, Davis & Carlton, of Manchester, N. H., for plaintiff.

Wyman, Starr, Booth & Wadleigh, of Manchester, N. H., for defendant.

MORRIS, District Judge.

This is an action alleging unfair competition in the use of the plaintiff's trade-name, seeking a permanent injunction and damages.

The plaintiff, Western Auto Supply Company, was incorporated in 1914 under the laws of the state of Missouri and has always used and still uses that name and the shorter name, "Western Auto Stores," in the advertising and sale of automobile supplies and accessories.

The defendant, the Western Auto Supply Company, is a corporation organized under the laws of the state of New Hamp-

shire and doing business at Manchester in said state, and at Portland in the state of Maine. It was incorporated July 5, 1934, by James Rosenblum and Wilfred Lessard of Manchester, N. H., and Max Cohen of Lowell, Mass. It has also used a shorter name, "Western Auto Stores."

Plaintiff's bill alleges, in brief, that for several years past it has advertised its business throughout the United States by means of catalogues and newspaper advertising at an expense of many thousands of dollars; that it has become well known under its corporate name, "Western Auto Supply Company," and its more popularly known name, "Western Auto Stores," as a nation-wide distributor of automobile supplies and accessories; that its business by direct selling and by sales through catalogues extends into every state of the United States; that in the year 1934 it did a gross business in excess of $17,000,000, and has established through sound merchandising and skillful management a widespread favorable reputation with the public resulting in the creation of a valuable good will; that the stores which serve the public in this locality are the following: 130 Brookline avenue, Boston; 118 Brighton avenue, Boston; 127 Federal street, Boston; 628 Mass avenue, Cambridge, Mass.; 200 Pleasant street, Malden, Mass.; 1536 Hancock street, Quincy, Mass.; 21 Market street, Lynn, Mass.; that it has expended large sums of money in advertising its stores and its products in newspapers having a large circulation in this district; that it does a mail order business in addition to its sales from its local stores.

The bill further alleges that immediately upon its incorporation the defendant opened a store at 1202 Elm street in Manchester, N. H., for the purpose of competing and selling the same general merchandise as is sold by the plaintiff; that the use by the defendant of its corporate name and the name "Western Auto Stores" was in fact an imitation of the plaintiff's names; that the plaintiff believes and therefore avers that the use of the names of the plaintiff in the manner above set forth by the defendant is a willful, wrongful, fraudulent, and malicious undertaking and contrivance to secure and avail itself of the good will, reputation, and business of the plaintiff, and that it interferes with, impairs and diminishes the plaintiff's business; that the continued use of the plaintiff's name in the manner aforesaid deceives customers of the plaintiff and is a fraud upon the public; that the plaintiff has been damaged by the continued wrong of the defendant to the amount in excess of $3,000 and will in the future be damaged in sums greatly in excess of said amount; and that the continued damage to the plaintiff cannot be accurately estimated and is therefore irreparable. The bill concludes with a prayer for a permanent injunction and damages.

### Findings of Fact.

I find as a fact that the plaintiff is one of the leading distributors in the country of auto supplies and accessories; that it has 41 stores in the eastern district along the Atlantic seaboard of which 7 are located in Boston and its immediate vicinity. The annual gross sales of the 41 stores based upon 11 monthly reports amounts to $4,500,000. These figures do not include the mail order business. The business done at the 7 stores above mentioned approximates $675,000 which results from extensive advertising through newspapers, catalogues, and circulars and pamphlets distributed to individuals making store purchases. The annual cost of advertising is about 4½ per cent. of the gross volume of its sales. Its advertising cost in the Boston district for 11 months of the year 1935 was in excess of $15,000, done through the Boston American and Boston Traveler newspapers having a wide circulation throughout the New England states. Many catalogues were sent to people in New Hampshire towns having a population of less than 10,000. Their stores are patronized by Maine and New Hampshire people. Some mail order business was done in the latter state; but the evidence does not disclose the amount.

The evidence does disclose that the plaintiff received orders from persons in 48 different towns in the state of New Hampshire. Most of its business is done with garage owners and automobile dealers, and it sells some articles at prices less than wholesale price for the same articles found in defendant's catalogue, only one of which was ever prepared and sent out by the defendant.

It does not appear that the plaintiff ever attempted to open any stores in the state of New Hampshire until some time in 1935 when its district manager from the Boston district went to Manchester and examined a vacant store with the thought

in mind of opening a branch in that city, but nothing further was done.

The defendant immediately upon its incorporation July 5, 1934, opened a store at 1202 Elm street, Manchester, N. H., selling the same general line of merchandise sold by the plaintiff. It used the exact name of the plaintiff, namely, "Western Auto Supply Company," and also the shorter name, "Western Auto Stores."

I find that it was the intention of the defendant to imitate the plaintiff's trade-name and secure to itself some of the good will that had been built up by the plaintiff through its extensive advertising.

The defendant's manager testified that the store did only a wholesale business, but from further examination it appeared that any one who came in with money could buy articles at retail.

An examination of photographs of the defendant's Manchester store discloses in large letters the sign, "Western Auto Supply Company," and on the display window the words, "Wholesale Division."

Whether this was intended to imply that the store was a branch of the plaintiff's stores doing a wholesale business is not disclosed by the evidence. I find that any one familiar with the plaintiff's business might well mistake the Manchester store of the defendant as the wholesale division of plaintiff's stores.

Max Cohen, the general manager of the defendant's store living in Lowell, Mass., was not present at the trial, although no sufficient reason appears for his absence. Counsel for the plaintiff was unable to ascertain from the local manager why Cohen selected the identical name used by plaintiff in its business. Unless the defendant desired to secure some of the plaintiff's business he could just as well have incorporated under the name of "Eastern Supply Company," or some other name that would not be an imitation of the plaintiff's trade-name.

I find that Cohen selected the names deliberately for the purpose of securing some of the plaintiff's business.

Plaintiff's complaint makes no claim of a copyright or a trade-name registration, but I find that by means of extensive advertising throughout the United States and through skillful management it has gained a favorable reputation with the public so that its names have come to have a secondary meaning.

## Rulings of Law.

Defendant contends that the plaintiff has no legal right to any single word in its corporate name; that the defendant had a legal right to form a corporation to be known as the "Western Auto Supply Company," and that it discontinued the use of the shorter name.

It appears, however, that the discontinuance of the shorter name was not until after plaintiff's action was filed, May 15, 1935.

It is clear that if the defendant were permitted to engage in the same line of business under its corporate name identical with the plaintiff's trade-name, third persons would be likely to deal with the defendant thinking they were dealing with the plaintiff, and the identity of the plaintiff would be confused and destroyed.

█ The general rule is that, as between conflicting claimants to the right to use the same name in the same area in connection with the sale of the same products, priority of appropriation determines the question of right. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90–100, 39 S.Ct. 48, 63 L.Ed. 141.

Under the law, the corporate name is a necessary element of the corporation's existence. "Any act which produces confusion or uncertainty concerning this name is well calculated to injuriously affect the identity and business of a corporation. And as a matter of fact, in some degree at least, the natural and necessary consequence of the wrongful appropriation of a corporate name, is to injure the business and rights of the corporation by destroying or confusing its identity." Newby v. Oregon Central R. Co., Fed.Cas. No. 10,144.

In the case of Standard Oil Company of New Mexico v. Standard Oil Company of California (C.C.A.) 56 F.(2d) 973, it was held that the name of the defendant Standard Oil Company of New Mexico was confusingly similar to the plaintiff's name Standard Oil Company of California.

█ The secondary meaning of a name, however, has no legal significance, unless the two parties make or deal in the same kind of goods. In the instant case, they do deal in the same kind of goods, and the plaintiff having first appropriated its corporate name and established its good will, its names have acquired such a secondary meaning as will entitle it to restrain by

injunction any one dealing in the same line of goods under the same or a similar name.

Defendant further claims that the plaintiff has no right to an injunction against the use of its identical name in a state where it is in fact not engaged in business if such name has been properly and legally adopted by a domestic corporation.

The defendant questions the right of the plaintiff, a foreign corporation, to do business in the state of New Hampshire because it has never registered its name or appointed the secretary of state its agent or attorney upon whom service of process might be made, as required by chapter 231 of the Public Laws of New Hampshire (section 1).

In the case of General Film Company of Missouri v. General Film Company of Maine (C.C.A.) 237 F. 64, it was held that a corporation organized under local laws adopting the name of a foreign corporation has no right to the use of the name of such foreign corporation for the purposes of unfair competition.

■ A foreign corporation can restrain the use by a domestic corporation of a trade-name similar to its own when such name is chosen by the domestic corporation with the notice of the name and business of the foreign corporation even though the latter has obtained no authorization to do business in the state. This principle of law is based upon the prevention of fraud. See U. S. Light & Heating Co. of Maine v. U. S. Light & Heating Co. of New York (C.C.) 181 F. 182; Philadelphia Trust, Safe Deposit & Ins. Co. v. Philadelphia Trust Company (C.C.) 123 F. 534; Nims on Unfair Competition and Trade-marks (3d Ed.) 239; Household Finance Corp. v. Household Finance Corp. (D.C.) 11 F.Supp. 3, 6. In the last-mentioned case it is held that, "when a state grants a, charter to a corporation in accordance with the name selected by the corporation, the state does, not, warrant the name, nor does it guarantee that the domestic corporation shall have the full right and privilege to that name, regardless of any previous existing right to another."

Defendant asserts that companies doing business in different localities and not in direct competition may exist under the same or similar names—citing, National Grocery Co. v. National Stores Corporation, 95 N.J.Eq. 588, 123 A. 740; Kaufman v. Kaufman, 223 Mass. 104, 111 N.E. 691; Briggs Co. v. National Wafer Co., 215 Mass. 100, 102 N.E. 87, Ann.Cas.1914C, 926.

It is a well-known fact that many New Hampshire people go to Boston and vicinity for trade. So far as it may be found as a fact, I find that Boston and vicinity where plaintiff's stores are located and New Hampshire and Maine are within the same trading area, and that the plaintiff, through advertising and catalogues, has expanded its business to include such area.

In the case of Sweet Sixteen Company v. Sweet "16" Shop, Inc. (C.C.A.) 15 F.(2d) 920, it is held that the use of the name Sweet 16 Shop, Inc., in carrying on business in Utah similar to that of a California corporation using the trade-name "Sweet Sixteen Company," which had expanded its business to include Utah as part of its territory by catalogues and advertisements, constituted unfair competition with respect to the business of the last-mentioned corporation.

The facts in the instant case distinguish it from the case of Hanover Star Milling Company v. Metcalf, 240 U.S. 403, 36 S. Ct. 357, 60 L.Ed. 713, and from the case of United Drug Company v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141.

The fact that the plaintiff sells at retail and the defendant claims to sell only at wholesale is immaterial so long as both deal in the same line of merchandise.

It follows that the plaintiff is entitled to the relief sought.

Counsel may prepare and present an appropriate injunctive order. The question of damages will be heard later at the convenience of the parties.