Merrimack,
May 1, 1945. } No. 3523.

NARDINI'S RESTAURANT, INC. *v.* THE STERLING RESTAURANT
CO., INC. & a.

*Charles W. Tobey, Jr.* (by brief and orally), for the plaintiff.

*A. W. Levensaler, Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the defendants.

PAGE, J. The master found that "Giuseppe Nardini carried on a long established business at 6 North Main Street and was widely known throughout northern New England as a restaurant owner . . . had built it up so that 'Nardini' was a word of wide reputation and of considerable value in connection with the restaurant business. Signs bearing his name were scattered widely over this state and elsewhere. Financial troubles overtook him . . . and he filed . . . on or about June 13, 1935, a petition asking . . . for the right to reorganize under sec. 77B of the Bankruptcy Act. This petition was filed . . . as treasurer of the G. Nardini Company, . . . which was the name under which . . . the business . . . was being carried on." The G. Nardini Company was a corporation.

Further facts found, as far as are material for this opinion, will be stated in substance. Upon the bankruptcy petition, the United

States District Court issued an order permitting the formation of a corporation to take an assignment, on certain terms, of the assets of the debtor, its good will, and the right to use the name "The Nardini Company," but not the name "G. Nardini." The plan for reorganization in this manner having failed, the District Court ordered the Trustee in Bankruptcy to sell the property of the debtor corporation. The sale was accordingly made on January 28, 1936, to a new corporation called The Nardini Company. The bill of sale, in accordance with specific authority from the District Court, included "all the good will of G. Nardini Company and the exclusive right to use the name of G. Nardini Company but not to abridge the right of G. Nardini personally to use his own name in his business or otherwise." This sale was formally confirmed by the District Court.

At this point it may be said that the defendants argue that the plaintiff has no right to use any name but The Nardini Company, but it is apparent that the intention was to give them the right to the Nardini good will connected with the tangible property conveyed, even to the use of the name G. Nardini Company, if the purchaser wished. The only thing excluded was the right of G. Nardini to use his own name "in his business or otherwise." The right thus reserved to him he must use under limitations prescribed by the law of fair competition, later to be discussed. The order of the Court could not have been intended to remove those limitations.

The purchaser company, The Nardini Company, in turn, fell upon financial troubles. On April 11, 1939, it made an assignment for the benefit of its creditors, and on May 24, 1939, the assignees sold the property to Costas Economu and Costas Canachelos, "together with all goodwill" and the right to the use of the name "The Nardini Company, but not the name G. Nardini." Again there is the obvious intention of conveying everything attached to the good will except the right of G. Nardini to use his own name. Economu and Canachelos formed a new corporation, the plaintiff, and conveyed to it, August 19, 1939, the property and good will, with the same limitation as to the right of G. Nardini.

Meanwhile, in the spring or summer of 1936, Giuseppe Nardini began to work for the defendant corporation in a restaurant known theretofore as the Sterling Cafe, a name appearing upon an exterior electric sign and also upon the windows. After it employed Nardini, the defendant corporation then placed upon the top of its electric sign a much larger sign with the letters "NARDINI" arranged

vertically, the letters being much larger and more prominent than the horizontal "Sterling Cafe" below. Within three hundred feet and diagonally across Main Street, was the electric sign that the old Nardini Restaurant had long used, in a form that the defendant corporation imitated—"NARDINI" vertically in large letters; below and horizontally, in smaller letters the word "Restaurant." The master found that the "natural result is to confuse completely the identity of the two restaurants . . . to confuse the stranger who has seen the advertisements both below and above Concord and elsewhere."

The evidence appears to be uncontradicted that the restaurant, whose good will was bought by the plaintiff, had for many years been popularly known as "The Nardini Restaurant," a designation carried in substantial agreement by the electric sign and the advertising billboards that had been conveyed to the plaintiff's ancestor in title by the Trustee in Bankruptcy. (See *Cain's Lobster House* v. *Cain*, 312 Mass. 512; *Wright Restaurant Co.* v. *Company*, 67 Wash. 690). The identical name, "Nardini Restaurant," appears upon the defendants' windows, and the name "NARDINI" is by far the most prominent feature of the defendants' confusing electric sign.

The master ruled that the purchaser of good will and trade names in a bankruptcy sale or a sale by assignees will be protected against unfair competition by the bankrupt, a ruling amply sustained by the authorities cited in Nims, Unfair Competition and Trade Marks (3d *ed.*), 80. He further ruled, and correctly, that the right of G. Nardini to the personal use of his name did not carry with it the right to use it in unfair competition of the sort resulting from the confusing use of signs in this case.

When Nardini went to work for the defendant corporation in 1936, his duties, as the master found, were limited; "he was to advise but had no power to direct. The admitted purpose of his employment at the Sterling was to draw business from his old stand at 6 North Main Street and to draw business from out of the state where the name Nardini had a more than state wide reputation." G. Nardini claimed the sole right to the use of the name "Nardini." He brought a bill in equity to restrain the plaintiff from its use, a proceeding pending when he died and not dismissed until several years subsequent to his death. After that case was off the docket, the plaintiff brought this proceeding, which the master found under the circumstances is not barred by laches. Nardini quarreled with the

defendant corporation, left its employ, and, consistent with his claim to the sole right to use the name "Nardini," obtained an injunction against the use of the name by the defendant corporation, in consequence of which the "Nardini" part of the defendant corporation's electric sign was covered for a time. Then Nardini went back to work for the defendant corporation and until he died late in 1939 permitted the use of the name at the defendants' place of business.

After G. Nardini died, intestate, his children assigned to their mother Sophia all their right, *as inherited from their father* (italics supplied), to "the trade-name Nardini in connection with the general restaurant business in said Concord." In consideration of the issue to her of five shares of the stock of the defendant corporation, Sophia Nardini assigned to that corporation the "exclusive right to use the name Nardini in the restaurant business in said Concord, during the corporate existence of the said Sterling Restaurant Company, Incorporated."

The plaintiff's bill sought an unqualified injunction against the use of the name "Nardini" by the defendants. The injunction recommended by the master and ordered by the Superior Court was a qualified one, prohibiting only such use "as is at present being made by the defendants, or any such use by them as will create confusion or promote unfair competition with the business of the plaintiff."

The defendants have waived all exceptions save that to the denial of their motion to dismiss the bill, which is the sole point discussed in their brief and argument. Their argument is, in substance, that the plaintiff had no right to what it did not get — an unqualified injunction against the use of the name "Nardini." Since the plaintiff has not excepted to the denial of an unqualified injunction, the question argued by the defendants is not now open to decision. However, the subject is of such interest that some questions and doubts about the defendants' position may properly be expressed, by way of *dictum.*

The main point made by the authorities cited by the defendants is that though a bankrupt's business good will and trade name have been sold to another, the bankrupt still has the right to use his own name in a competing business, as individual, partner or a stockholder of a corporation bearing his name. Conceding the point as one of general truth, it may be doubted whether this personal right, specifically attempted to be reserved to Nardini by the District Court, can operate in a vacuum, so that the bankrupt may authorize the use of his name in any business in which he has no ownership interest.

When G. Nardini was employed by the defendant corporation, conformably to a written agreement dated March 27, 1936, it was clear that he was made an employee without power to do more than advise, and that the corporation was under no least liability to take his advice, but, on the contrary, Nardini was subject to the direction of the manager of the corporation. In consideration of the employment thus created, Nardini agreed that the defendant corporation could use signs "bearing the name in some form of Nardini . . . it being understood that when once placed the said sign or signs shall not be removed without the consent of the said Manus." Manus was the defendant corporation's manager.

If Nardini could thus convey the right to use his name, this conveyance seems to be an irrevocable one, by which Nardini lost forever all his personal right that it was possible for him to convey to another. If it left him with any residuary personal right to use his name in his own competing business, that right, being purely a personal one, would appear to have expired with his decease and be of no advantage to his estate.

There was, it is true, an agreement that if Nardini's employment by the defendant corporation should result, within six months, in doubling the defendant's business, Nardini should have the option of purchasing for cash a half interest in the business at its then book value. This remote chance of his becoming part owner or stockholder in a business using his name never came to anything, and Nardini never had any interest in the business. No case cited by the defendants, or discovered by us, has ever held that a bankrupt may thus separate his right to use his name in business from a business in which he has a legal interest, or that he may convey a trade name which he has not acquired in business owned at least partly by him. The trade name (except for "G. Nardini"), that Nardini had acquired in connection with such a business was already owned by the plaintiff's predecessor in title. Whatever personal right Nardini had to trade for himself in his own name, it would seem that he had no power to convey that right, unattached to any business of his. The obvious motive of the arrangement he made, as found by the master upon undisputed evidence, was to draw away from the plaintiff and its predecessors the very good will and trade name for which they had paid. Under all the circumstances, it is at least possible that the agreement made by Nardini with the defendant corporation was a "sham" or a "theft," a purely fraudulent transaction that could convey nothing. *Chapman* v. *L. E.*

*Waterman Co.*, 163 N. Y. S. 1059, 1068; dissenting opinion of *Pitney*, J. in *Waterman Co.* v. *Modern Pen Co.*, 235 U. S. 88, 98; John H. Wigmore in 10 Ill. Law Rev., 178, 185.

However that may be, the right that Nardini had after he signed the agreement of 1936 was a purely personal right to use his own name in his own business. That personal right, as already suggested, was not an asset of his estate, it did not descend to his heirs, and the defendant corporation took nothing by the assignment from Sophia Nardini, however much it gave in return.

But the qualified injunction actually issued in this case is sustainable even if an unqualified one would not have been, and we are not called upon to decide that an unqualified injunction against the use of the name "Nardini" in any fashion would not have been proper under the existing facts. The sort of injunction ordered below is sustainable under the authorities cited by the defendants. Under very similar circumstances, the use of an electric sign bearing the name "Ralph" or "Ralph's," the popular name of the plaintiff's business, in which the defendant had formerly been interested, was enjoined even though the defendant could still use his own name in a competing business in which he was a partner. *Ralph Brothers Furniture Co.* v. *Ralph*, 338 Pa. 360. The name "Nardini's Restaurant" was what the plaintiff's place of business was known by for at least twenty years before the defendant corporation infringed upon its use, with less claim, it seems, than Ralph had in the case just cited.

In *Harson* v. *Halkyard*, 22 R. I. 102, also cited by the defendants, the defendant's partner, named Harson, was held to have the right to engage in a competitive business as such partner and to authorize the use of his name by his partner. But the Court particularly emphasized the point that there was no resemblance between the signs, labels and advertisements used by the two concerns, and the only confusion resulted from the use of the name of the defendant's partner. Obviously, however, the defendants, in the present case, have been guilty of intentional interference with the plaintiff's business by the use of designedly confusing misrepresentations.

A third case cited by the defendants is *Horlick's Malted Milk Corporation* v. *Horluck's*, 59 F. (2d) 13, where the defendant, though not prohibited from using his own name in his own competitive business, was enjoined from causing confusion, not only by advertising in forms similar to the plaintiff's, but also even from using his name in the possessive form (Horluck's or Horlucks).

Undoubtedly, the most favorable legal rule for the defendants is as stated in these cases. Even if Giuseppe Nardini had engaged in his own business, under his own name, he could not have used the forms of unfair competition, by way of confusing and misleading the public, that the defendant corporation has been guilty of for nine years. If he, himself, could not have done so, he could give the defendants no such right, nor could his heirs, as the master properly ruled.

*Exceptions overruled.*

BURQUE, J. was absent: the others concurred.