CHART HOUSE, INC., etc.,
Plaintiff, Appellant,

v.

Stuart BORNSTEIN, d/b/a Chart House Village, Defendant, Appellee.

No. 80–1410.

United States Court of Appeals,
First Circuit.

Submitted Oct. 10, 1980.

Decided Dec. 11, 1980.

A. Lane McGovern, Michael J. Beautyman, Ropes & Gray, Boston, Mass., George B. Newitt, Denis A. Berntsen, and Allegretti, Newitt, Witcoff & McAndrews, Chicago, Ill., on brief, for appellant.

Before COFFIN, Chief judge, ALDRICH and PELL,* Circuit Judges.

* Of the Seventh Circuit, sitting by designation.

ALDRICH, Senior Circuit Judge.

This action, seeking, inter alia, preliminary and permanent injunctions is brought by Chart House, Inc., owner of registered service marks, The Chart House and Chart House as logos for use in restaurant and bar services,[1] against defendant's use of the name Chart House Village in connection with a "shopping, living and dining complex" in Hyannis, Massachusetts. Following various discovery procedures plaintiff pressed for the preliminary injunction. After hearing, this was denied, and plaintiff appeals.

There is no claim that the names do not sufficiently coincide, or that plaintiff was guilty of laches. Defendant concedes that he knew of plaintiff's name before he finally adopted his. The court's sole dispositive findings were the following:

"[Defendant's] complex at present harbors[2] only a small salad bar restaurant. It is not centrally located in any metropolitan or tourist area where plaintiff is, or intends to be, doing business . . . . This court finds there is little likelihood of confusion between the two establishments in this action. Plaintiff has failed to establish irreparable injury and probability of success on the merits."

This was a very inadequate, as well as inaccurate, account. The complaint alleged, and defendant did not deny, that plaintiff has operated restaurant and bar services under the "Chart House" name since 1962; that it presently operates thirty–five "Chart House" restaurants throughout the United States, including six (in total) in Massachusetts, Connecticut and Rhode island; that its annual gross exceeds $30,000,-000; and that it annually spends in excess of $300,000 for advertising and promotion, mostly local in nature, and featuring its marks. By failure to respond, also, to plaintiff's requests for admission of facts,

F.R.Civ.P. 36(a), defendant has further admitted that Chart House Village is a living, eating and shopping complex, having, in addition to fifty–two apartments, sixteen stores and one restaurant, with space reserved for a second; that "Chart House" restaurants are "well and favorably known throughout the United States" and are identified with the plaintiff; that plaintiff operates a "Chart House" restaurant in Boston; that both Chart House Village and Chart House advertise on radio and in newspapers and publications throughout the Boston and Cape Cod areas; that Chart House customers in Boston include tourists to the Cape Cod area and Boston and Cape Cod residents, and that Chart House Village is visited by tourists and residents of both areas, with tourists coming from all parts of the country.

These admissions were confirmed and supplemented by depositions of three of the complex's sixteen shopkeepers,[3] one of whom estimated that his shop averaged probably two thousand customers a week.

At the hearing, in response to this showing, the court made the following remarks:

"It's residential. The people living there wouldn't be confused. It isn't as though you have a restaurant, a Chart House Restaurant in a hotel where you have a lot of transitory traffic.

. . . . .

"It really isn't on the beaten track at all . . . . I don't know anybody who could be drawn there . . . . I don't know how many times I drove by there, and I was never tempted to stop– . . . . It struck me as one of those selfcontained apartment units . . . ."

Even if the court's driving–by observations were not contradicted by the agreed—

---

1. U.S. Registration Nos. 944,243, Oct. 3, 1972, and 1,061,033, Mar. 8, 1977, respectively, and Massachusetts Registration No. 26,479. The validity of the registrations is not in dispute.

2. The court's use of the word "harbors" is interesting. Both parties, consistently with

their names, feature a nautical decorative motif.

3. E. g., "[Customers from] all over the country . . . . I think the majority is probably Massachusetts and Connecticut and Rhode Island."

to record of what was inside,[4] his ultimate findings constituted altogether too narrow an approach. The fact that defendant did not plan to build close to plaintiff's establishment, a matter that concerned the court during the hearing,[5] is not the sole issue. A junior user that seeks to "borrow ... the owner's reputation," *Yale Elec. Corp. v. Robertson*, 2 Cir., 1928, 26 F.2d 972, 974 (L. Hand, J.), demonstrates by its conduct that confusion is intended. Even if this element of intent is not shown, likelihood of confusion may reach as far as the mark's reputation. *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 7 Cir., 1965, 350 F.2d 609, 612–14; *Stork Restaurant, Inc. v. Sahati*, 9 Cir., 1948, 166 F.2d 348, 358. There would seem a special likelihood of confusion where there is a recognizable mutuality of potential customers.

While not expressing a final view on the merits, we hold that as a matter of law plaintiff has shown itself entitled to a preliminary injunction. Reversed and remanded to another judge, since there have been findings, for such entry and for further proceedings consistent herewith. Costs to appellants.

---

**4.** Quite apart from this variance, while the court's remarks were not objected to, we must note our concern. For a court to interject its personal evidentiary observations is against basic principles. *Fox v. West Palm Beach*, 5 Cir., 1967, 383 F.2d 189, 194; *Leong Kim Wai v. Burnett*, 9 Cir., 1928, 23 F.2d 789, 791; 9 Wigmore, Evidence § 2569 (Chadbourn Rev.). *See also* Code of Judicial Conduct for United States Judges, Canon 3(C)(1)(a). *Compare United States v. Parrilla Bonilla*, 1 Cir., 1980, 626 F.2d 177 (proper judicial notice taken of indisputable facts).

**5.** Defendant urged this ground at the hearing to distinguish plaintiff's case of *Victoria Station,*

*Inc. v. Clarefield, Inc.*, W.D.Pa., 1978, 458 F.Supp. 199. Neither then, however, nor since, has defendant supported his position with affirmative authority. We are led to wonder, in view of plaintiff's valuable and expensively–promoted reputation, if defendant is not simply endeavoring to freeload as long as possible, and whether the length of time he had succeeded should suggest that a change of name, if the district court finds it called for, should be substantial enough to obviate even the possibility of this in the future. *Cf. Food Center, Inc. v. Food Fair Stores, Inc.*, 1 Cir., 1966, 356 F.2d 775 (illustrating the need for substantial name changes to avoid future confusion).