**PURITAN FURNITURE CORP.**

v.

**COMARC, INC. et al.**

**No. C81-88-L.**

United States District Court,
D. New Hampshire.

Feb. 26, 1981.

Jamie N. Hage, Manchester, N. H., Edward F. Perlman, Wolf, Greenfield & Sacks, Boston, Mass., Richard A. Gelerman, Chestnut Hill, Mass., for plaintiff.

John P. Griffith, Hamblett & Kerrigan, Nashua, N. H., for defendants.

## ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER

LOUGHLIN, District Judge.

In this action, the plaintiff requests injunctive relief alleging various counts. These counts include unfair competition, trademark infringement, dilution and cancellation. These counts arise out of the defendant's unauthorized use of plaintiff's service mark, tradename, and/or trademark, *Puritan Furniture*, as used in connection with the sale of furniture products.

The plaintiff seeks immediate relief in the form of a temporary restraining order (hereinafter referred to as TRO). It is clear that the court must consider four factors in determining whether or not to grant a TRO.

The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006 (1st Cir. 1981).

The court looks for guidance to two recent First Circuit opinions in ruling on this issue. See *Raxton Corp. v. Anania Associates, Inc.*, 635 F.2d 924 (1st Cir. 1980) and *Chart House, Inc. v. Bornstein*, 636 F.2d 9 (1st Cir. 1980). In the instant action, plaintiff relies upon its common law rights in seeking the requested relief. Plaintiff has not registered its tradename in Massachusetts. Neither plaintiff nor defendant had received federal registration. Defendant obtained a New Hampshire registration of the tradename, Puritan Furniture, on January 6, 1978. Plaintiff alleges that the New Hampshire registration was granted in error to the defendant. It is clear that registration is not essential in a common law claim for unfair competition. In *Western Auto Supply Co. v. Western Auto Supply Co.*, 13 F.Supp. 525, 527 (D.N.H.1936) the court determined that the general rule as between conflicting claimants to the right to use the same name in the same area in connection with the sale of the same products was "priority of appropriation determines the question of right". In *Western Auto Supply Co. v. Western Auto Supply Co.*, *supra*, the court stated that:

A foreign corporation can restrain the use by a domestic corporation of a tradename similar to its own when such name is chosen by the domestic corporation with the notice of the name and business of the foreign corporation even though the latter has obtained no authorization to do business in the state. This principle of law is based upon the prevention of fraud. See *U. S. Light & Heating Co. of Maine v. U. S. Light & Heating Co. of New York* (C.C.) 181 F. 182; *Philadelphia Trust, Safe Deposit & Ins. Co. v. Philadelphia Trust Co.* (C.C.) 123 F. 534; Nims on Unfair Competition and Trademarks (3d Ed.) 239; *Household Finance Corp. v. Household Finance Corp.* (D.C.) 11 F.Supp. 3, 6. In the last mentioned case it is held that "when a state grants a charter to a corporation in accordance with the name selected by the corporation, the state does not warrant the name, nor does it guarantee that the domestic corporation shall have the full

right and privilege to that name regardless of any previous existing right to another."

*Supra*, at 528. See also *Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.*, 371 F.2d 251 (7th Cir. 1966).

In *Raxton Corp. v. Anania Associates, Inc.*, *supra* neither party had received federal registration although the defendant had registered in Massachusetts. The court stated in *Raxton*:

The trademark owner who ignores this statutory mechanism (the Lanham Act) or whose claim to trademark rights depends on a timing difference so close that the delay in federal registration processing is fatal, cannot be heard to complain about its failure to preempt subsequent *good faith* users.

*Supra*, at 931.

In *Raxton Corp. v. Anania Associates, Inc.*, *supra*, the court rejected the district court's use of the natural expansion doctrine as a matter of state law and as a matter of federal law. In rejecting the doctrine as a matter of federal law, the court stated "[S]ince Rack adopted its name in good faith, and as ... Rax had established no prior use of or reputation for the name in Massachusetts, we hold the district court erred ..." *supra*, at 931. However, the natural expansion doctrine which the court rejected in *Raxton Corp. v. Anania Associates, Inc.*, *supra*, it appears is applicable in the instant case. The court acknowledged in *Raxton* that the unfairness of the doctrine of natural expansion vanishes if the hypothesis of the innocent subsequent user is dropped [or] if it is shown that the disputed trademark is known to consumers in the area of subsequent use prior to the subsequent user's adoption.

In footnote 9, it was noted that "Notice is the determinative factor usually sufficient in itself to bar the second user's claim" *supra*, at 930. It appears clear in the instant case that the disputed trademark was known to consumers in the area of subsequent use prior to the subsequent user's adoption.

■ In *Katz Drug Co. v. Katz*, 89 F.Supp. 528, 535 (E.D.Mo.1950), aff'd 188 F.2d 696 (8th Cir. 1951) cited by the court in *Raxton Corp. v. Anania Associates, Inc.*, *supra* at 10 the court determined that to be entitled to protection under the theory of natural expansion, it must be shown either:

1. that the junior appropriator adopted the senior user's mark with a 'design inimical to the interests of the latter, that is adopted it in bad faith [or]

2. that the senior user, at the time of the adoption of the mark by the junior user and in the territory in which the junior user employed the mark, had something variously denominated by different courts as 'secondary meaning', 'good-will' or 'reputation'.

■ In *President and Trustees of Colby College v. Colby College, N. H.*, 508 F.2d 804 (1st Cir. 1975) the court in granting injunctive relief, determined that to find secondary meaning, plaintiff need only prove a "primary significance". There's a sufficient secondary meaning as long as a significant quantity of the consuming public understand a name as referring exclusively to the appropriate party. at 807. Secondary meaning may be established from the admitted fact of long and exclusive use.

■ The size or prominence of an enterprise may warrant the inference that its name has acquired secondary meaning. And, while secondary meaning is shown by the success rather than by the mere fact of an enterprise's promotional efforts the normal consequence of substantial publicity may be inferred. *Supra*, at 807–8–9.

In *Chart House, Inc. v. Stuart Bornstein d/b/a Chart House Village*, the plaintiff Chart House, Inc. had registered service marks, U. S. Registration Nos. and Mass. Registration No.

The defendant conceded he knew of plaintiff's name before he adopted his. The court in granting plaintiff a preliminary injunction stated "A junior user that seeks to 'borrow ... the owner's reputation', *Yale Electric Corp. v. Robertson*, 2 Cir. 1928, 26 F.2d 972, 974 (L.Hand, J.) demonstrates by its conduct that confusion is intended. Even if this element of intent is not shown, likelihood of confusion may reach as far as the mark's reputation." *supra*, at 11.

■ As a question of New Hampshire law, the court looks to case law and RSA 349:11 and 350–A:14. It appears that common law rights are specifically left intact under the New Hampshire statutes. RSA 349:11 states: "Nothing herein shall adversely affect the rights or the enforcement of rights in trade names acquired in good faith at any time at common law." In *Blastos v. Humphrey*, 112 N.H. 352, 354, 296 A.2d 918 (1972) in sustaining the award of a limited injunction, the court found that it could reasonably be found upon the evidence that the plaintiff's trade name, by reason of its use for five years as a trade or service mark, had acquired a secondary meaning or significance in the eyes of the public sufficient to entitle it to protection. *Bogosian v. Fine*, 99 N.H. 340, 111 A.2d 190 (1955), *Nardini & Co. v. Sterling*, 93 N.H. 364, 42 A.2d 325 (1945). In *Blastos v. Humphrey*, *supra*, the plaintiffs had registered the trade name "Mr. Pizza". Defendant sought to use the name "Mr. TakeOut". The manner in which the signs were displayed was similar in both instances. The court determined that:

The plaintiffs' right to an injunction depended upon their showing that substantial likelihood of confusion resulted from defendant's use. Restatement of Torts, s. 727, Comment c; ss. 728, 729 (1938); Prosser, Torts s. 130, at 957, 958 (4th ed. 1971). While there was evidence of actual confusion on the part of the public during the few weeks that the defendant's store had been in operation before hearing, the plaintiff's rights were not solely dependent upon this proof. They were not required to stand by until actual confusion caused damage. Where an injunction is sought as is the case here, "the determinative factor ... is not that purchasers have, in fact, been deceived, but that there is a reasonable likelihood thereof." 3 Callman, Unfair Competi-

tion, Trademarks and Monopolies s. 80.6 (3d ed. 1969); Developments in the Law-Trademarks and Unfair Competition, 68 Harv.L.Rev. 814, 863 (1955). The issue of confusing similarity is one of fact. Restatement of Torts, s. 728, Comment a (1938).

*Supra*, 112 N.H. at 354, 296 A.2d 918.

The court found that the trial court's finding that "certain confusion has arisen and is likely to arise in the future ... particularly as the defendant is currently using the abbreviation ... in a certain script identical with, or closely imitative of the "Mr." used by the plaintiffs" was sustainable upon the evidence. *supra*, at 355, 296 A.2d 918.

The plaintiff has been doing business in eastern Massachusetts for thirty years which includes customers in southern New Hampshire.

In April 1981 the plaintiff contemplates opening a furniture store in Manchester, New Hampshire which is approximately 22 miles from the northern border of Massachusetts. The defendant has been using the name of Puritan in Hudson, New Hampshire at the 20th Century Mall.

Plaintiff estimates that its fixed costs at the New Hampshire site will be $5,000.00 weekly and further complains that the defendant who has been in business since January, 1981 is taking advantage of its advertising which reaches the southern New Hampshire area. Advertising of 1½ million was expended by the plaintiff in 1980.

The defendant in addition to registering the tradename Puritan Furniture in New Hampshire also registered the tradename Levitz Furniture in New Hampshire on January 9, 1978. Levitz Furniture is perhaps the largest retail distributor in the country and is listed on the New York Stock Exchange.

Plaintiffs also allege that the tradename Jordan's Furniture for which the defendant registered a tradename in New Hampshire on January 6, 1978 is also the name of Jordans Furniture in Waltham, Massachusetts grossing 6 million dollars annually.

Whether these registrations are fortuitous are evidentiary matters to be resolved at the hearing on the full merits of this case.

The court, pending a hearing on the merits or further order of this court makes the following order.

The defendant is hereby temporarily enjoined and restrained from using "Puritan Furniture" on its premises in Hudson, New Hampshire or any other site in New Hampshire, advertising in the media or using any correspondence of any nature whatsoever with the name "Puritan Furniture".

This order shall become effective upon the plaintiff posting an indemnity bond in the sum of $50,000.00.