UNITED STATES LIGHT & HEATING CO. OF MAINE v. UNITED STATES LIGHT & HEATING CO. OF NEW YORK et al.

(Circuit Court, S. D. New York. June 21, 1910.)

1. CORPORATIONS (§ 49*)—INFRINGEMENT—KNOWLEDGE OF DEFENDANT.

In a suit by a Maine corporation to restrain the use by defendants of complainant's name, the fact that defendant did not know of the incorporation of the Maine company nor of its rights, is immaterial where the defendants were using the name of a New Jersey corporation from which the Maine company derived its rights.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 137; Dec. Dig. § 49.*]

2. GOOD WILL (§ 6*)—ASSIGNMENT—USE OF NAME.

An assignee of the good will and business of a corporation may use the old name, with or without incorporation.

[Ed. Note.—For other cases, see Good Will, Cent. Dig. § 4; Dec. Dig. § 6.*]

3. CORPORATIONS (§ 661*)—NAME—SUIT FOR INFRINGEMENT—PERSONS ENTITLED TO SUE—FOREIGN CORPORATION.

A foreign corporation may sue to enjoin the use of its name by a domestic corporation.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 661.*]

4. CORPORATIONS (§ 661*)—FOREIGN CORPORATION—NAME—SUIT FOR INFRINGEMENT—DEFENSES—COMPLIANCE WITH LAW.

That a New Jersey corporation has failed to take out a license, as required by General Corporation Law of New York (Consol. Laws, c. 23) § 15, as a condition precedent to doing business in New York, does not incapacitate its successor in interest to sue to enjoin the use of its name by a New York corporation, which thereby prevents the successor from taking out the license, the New Jersey company having the right to the name regardless of its business done in New York in violation of law.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 661.*]

5. CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—RIGHT TO SUE—FEDERAL COURTS.

That a New Jersey corporation has violated the New York law by doing business in New York without taking out a license does not deprive it of its rights to relief in the federal courts sitting in equity, in a case where the state statute, fixing the penalty for such a violation, leaves the state courts open to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2566; Dec. Dig. § 661.*]

6. CORPORATIONS (§ 661*)—FOREIGN CORPORATIONS—RIGHT TO SUE—COMPLIANCE WITH STATE LAW.

General Corporation Law of New York (Consol. Laws, c. 23) § 15, forbidding any foreign stock corporation from doing business in the state without a license, and providing that such a corporation may not sue on any contract made in the state, does not prevent a suit in the state courts to enjoin a wrongful use of the corporation's name.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2567; Dec. Dig. § 661.*]

7. CORPORATIONS (§ 661*)—FOREIGN CORPORATION—NAME—SUIT FOR INFRINGEMENT—DEFENSES.

The failure of a New Jersey corporation to pay its taxes in New Jersey does not disqualify it to sue to enjoin the use of its name by a corporation in New York.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 661.*]

In Equity. Suit by the United States Light & Heating Company of Maine against the United States Light & Heating Company of New York and another. Decree for complainant.

Dos Passos Bros., for complainant.

Alfred J. Talley, for defendants.

HAND, District Judge. Upon the merits I have no doubt that Moore's effort was either to embarrass the New Jersey company by preventing it from getting a New York license, or to set up a business which should divert or disarrange the complainant's business. The case is quite devoid of the usual excuses and defenses, and seems to me

to be a more impudent effort by a retiring or discharged employé to seize part of the business, than I have ever before met with. An especially flagrant fact is that Moore organized the company—which is the most obvious cover for himself alone—while he was yet in the employ of the New Jersey company. In short, he planned his dummy corporation to trade on the complainant's business while he was still taking the pay of the New Jersey company, and was pledged not only in law, but in good faith, to give it loyal service. It is a matter of no consequence whether or not Moore knew of the proposed incorporation of the Maine company and its rights, because the complainant stands in the right of the New Jersey company. The right to transfer the use of that name is not challenged, nor indeed could it be. Certainly an assignee of the good will and business may use the old name, either with or without an incorporation. The defendants raise two grounds of defense: First, that a foreign corporation may not prevent the use of the name of a domestic corporation; and, second, that both the complainant and the New Jersey company got no license to do business in New York, and that the New Jersey company failed to pay its taxes and lost its charter in New Jersey for that reason.

As to the first position, it is supported by Hazleton Boiler Co. v. Hazleton Tripod Boiler Co., 142 Ill. 494, 30 N. E. 339, and by some clearly obiter remarks in Continental Insurance Co. v. Continental Fire Association, 101 Fed. 255, 41 C. C. A. 326 (Circuit Court of Appeals, Fifth Circuit). However, a decision squarely in opposition is Peck Brothers Co. v. Peck Brothers Co., 113 Fed. 291, 51 C. C. A. 251, 62 L. R. A. 81 (Circuit Court of Appeals, Seventh Circuit), and another is the decision of Judge Bradford in Philadelphia Trust, S. D. & I. Co. v. Philadelphia Trust Co. (C. C.) 123 Fed. 534, in which, however, the point was apparently not discussed. No one contends that a domestic corporation may not get an injunction against another domestic corporation forbidding the piracy of its own name, and this is true as well in the federal as in the state courts. The distinction made in the Illinois decision is that a foreign corporation, which comes into the state by sufferance, cannot prevent the state from naming its own corporations as it will. However, this proves too much, because a court is as much bound by the act of a state government in giving a corporate name, when complaint is made by a domestic corporation, as when by a foreign corporation. The question is not who complains. If it were true that, in giving a corporation a name, the executive of a state licensed it to use that name in any way it chose, of course no court would have power to interfere at all with the use of the name, and the charter would become a general license to use that name, whether or not the use proved tortious. The sounder view—and, indeed, the only possible view, which can justify the interference of courts in such cases between domestic corporations—is that the corporate name is given merely as the name which the entity may use so long as it acts in accordance with law. By that name so chosen it gets no license to commit what would otherwise be a tort. For example, suppose Moore had in this case, under section 440 of the Penal Law

of New York (Consol. Laws, c. 40) adopted the name which he gave the defendant corporation. No one would for a moment suppose that the license given by that statute upon filing a record in the county clerk's office was a defense. Indeed, it would be only an added evidence of the wanton character of his attempt, just as it is here, when the corporation is a mere blind. Clearly the statute in that case would not give him immunity. Yet the general statute authorizing the formation of corporations is in this respect no different; it merely authorizes the taking of a name when used lawfully.

If this be so, as no one denies, the power equally exists, whoever is the complainant, and I confess I cannot see why a foreign corporation should be obliged to submit to a tort which the state has not legalized, and which, if committed against a domestic corporation, or an alien individual, could be remedied. Of course the state might make a foreign corporation wholly an outlaw and exclude it from all tribunals, but, in so far as it has the general right to appear and complain of torts, it must be presumed to stand upon the same basis as to this kind of tort, as it does as to others. For these reasons, I shall hold that the complainant may sue.

There remains the defense of its misconduct in failing to take out a license in this state. Section 15 of the general corporation law of New York (Consol. Laws, c. 23) forbids any foreign stock corporation from doing business without a license, and then says that such a corporation may not sue on any contract made in the state. The New Jersey company never did take out a license, and the complainant is now unable to do so, because of the defendant's having first obtained registration of its name, a result which in my judgment is the real cause of its existence.

In the first place the name of the New Jersey company was assumed by law and there is no allegation or proof that the rights upon which the complainant depends was built up through violation of law. Therefore the case is not like Edward Thompson Co. v. American Law Book Co., 122 Fed. 922, 59 C. C. A. 148, 62 L. R. A. 607, where the complainant was seeking to protect a right which was itself as piratical in origin as the piracy of the defendant. The name was here given by the incorporation of the New Jersey company and could be protected generally quite independently of that part of the good will arising from the business done in New York without license. So the Circuit Court of Appeals for the Third Circuit has held in a precisely similar case upon a trade-mark, and for the purpose of this case there can be no difference between a trade-name and a trade-mark. Consolidated Ice Co. v. Hygeia Distilled Water Co., 151 Fed. 10, 80 C. C. A. 506.

I do not understand that even in trade-mark or trade-name cases, it is enough to show that the complainant has been guilty of some violation of law, to exclude him from a court of equity. I need not suggest extreme cases to show the reductio ad absurdum to which such a doctrine would be reduced were that the law. The maxim only applies when the wrongdoing has some association with the right on which the complainant depends, and the furthest that the courts have gone

is to disqualify a complainant in case there is deceit in the statements associated with the name or mark (Manhattan Medicine Co. v. Woods, 108 U. S. 218, 2 Sup. Ct. 436, 27 L. Ed. 706, Worden v. California Fig Syrup Co., 187 U. S. 516, 23 Sup. Ct. 161, 47 L. Ed. 282), or in case, if that statement has been discontinued, that the mark or name actually grew up through disused misrepresentations, so that the resulting good will appear to be built up through a fraud (Seabury v. Grosvenor, 14 Blatchf. 262, Fed. Cas. No. 12,576). Merely to have once made a misstatement which was discontinued before it had time to affect the mark is not enough. C. F. Simmons Medicine Co. v. Mansfield Drug Co., 93 Tenn. 84, 23 S. W. 165. Indeed, it has even been held by the New York Common Pleas in Curtis v. Bryan, 36 How. Prac. 33, that the misrepresentation must be a part of the mark itself, though that I cannot accept.

Now, as I have said, the violation of law in this case did not give the right to the name in whole or in part. The New Jersey company had that right regardless of their New York business, nor does it appear that their name was used only in New York business. That being so, the name is not the result of such violation of law, and it is in no way connected with that violation. Hence, upon the general principles appertaining to the subject, I do not see how the complainant can be disqualified.

There is another consideration here applicable. The defendant's theory is that because the complainant has violated the law, therefore it cannot sue in a court of equity. However, the state has fixed the penalty for that offense and has made it in the form of a prohibition in certain cases upon the corporation's right to sue in the state courts. That is to say, it has indicated in what cases it shall not be allowed to sue, if in default. If this be not such a case, the question becomes whether under the guise of applying the maxims of equity I am to deny to a corporation recourse to a federal court because of its violation of a statute of the state, in a case in which the state courts would be open. I cannot think that this is a debatable question, especially in view of the federal decisions that the expressly penal part of the statute does not apply to federal courts. N. Y. Breweries Co. v. Johnson (C. C.) 171 Fed. 582.

What, then, is the rule in the state courts? The statute is limited to contracts and is extremely penal in any case. The only case, I have found, where it was interposed upon a tort was at law, and it was there unsuccessful. American Typefounders Co. v. Coner, 6 Misc. Rep. 391, 26 N. Y. Supp. 742. In the only case I can find which arose in equity—a case on all fours with the case at bar (American Tartar Co. v. American Tartar Co., 57 App. Div. 411, 68 N. Y. Supp. 236)—the point was squarely before the Appellate Division for the First Department and they dismissed the complaint, but I am corroborated in my understanding of the law from the fact that, though squarely raised by the facts, the court passed upon the merits and did not mention this point. In Parmelee Co. v. Haas, 171 N. Y. 579, 64 N. E. 440, the Court of Appeals said that the objection was at most "one as to the character or capacity of the plaintiff to sue," and was

waived by general answer, if it appeared on the face of the complaint. As the defect did here appear on the bill of complaint, it could not have been taken by answer in the state court, a result which is not consistent with its being a disqualification under the maxim of equity regarding "clean hands."

As for the failure to pay taxes to New Jersey, I have yet to learn that a man's failure to pay his taxes disqualifies him from suing in a court of equity, and the rule must be the same as to corporations.

Let a decree pass, with costs, enjoining the defendant company from using the name it now uses, and the defendant Moore from colorably imitating the complainant's name. Moore must pay the costs.