**RED SEAL REFINING CO. et al. v. RED SEAL REFINING CORP.**

No. 15995—Opinion Filed Nov. 24, 1925.

**1. Corporations — Foreign Corporations — Right to Enjoin Infringement of Corporate Name.**

It is a general rule that a foreign corporation may maintain an action in a court of equity to restrain a domestic corporation from infringing its corporate name.

**2. Same — Payment of State License Fee not Prerequisite to Suit.**

Compliance with the foreign corporation laws of this state, requiring the payment of an annual license fee or tax, is not a condition precedent to maintenance of an action either in contract or tort.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Red Seal Refining Corporation against Red Seal Refining Company, R. M. Shaw, Dudley Shaw, and G. B. Gabus. From judgment in favor of plaintiff, defendants bring error. Affirmed.

Rittenhouse & Rittenhouse, for plaintiffs in error.

E. E. Blake, Lydick, McPherren & Wilson, and M. E. Jordan, for defendant in error.

Opinion by PINKHAM, C. The Red Seal Refining Corporation, defendant in error, brought this suit, as plaintiff, to enjoin the Red Seal Refining Company, a corporation, R. M. Shaw, Dudley Shaw, and G. B. Gabus, plaintiffs in error, as defendants, from using the name of "Red Seal Refining Company" in the conduct of its business, and from using the trade-mark or symbol of the defendant in error. The parties will be rererred to as they appeared in the trial court.

At the conclusion of the evidence on the hearing on the part of the plaintiff, the defendants demurred thereto, which demurrer was by the court overruled, whereupon the defendants asked for judgment against the plaintiff on application for temporary injunction, which request was by the court overruled, to which defendants excepted. The defendants were then enjoined by the court from using the name "Red Seal Refining Company" or any symbol used by plaintiff, from which order and judgment of the court the defendants excepted and bring the cause to this court by petition in error and transcript of the proceedings had in said cause, for review, and assign as error that the court erred in overruling the demurrer of plaintiffs in error to the evidence of defendant in error and that the court erred in granting a temporary injunction.

The defendants introduced no evidence. The evidence introduced by the plaintiff shows, without conflict, that the plaintiff was incorporated in the state of Delaware on July 1, 1924, as the Red Seal Refining Corporation, by which charter it was authorized to do business in the state of Delaware and in other states where lawfully allowed. In July, 1924, plaintiff applied for domestication in Oklahoma, but because of an oversight in failing to forward certified copy of its articles of incorporation and to tender the proper amount of fees provided by statute in such case, the Secretary of State communicated this fact to the plaintiff and held the application in abeyance pending the receipt of the necessary papers.

It appears from the evidence that Mr. Hagerman, one of the incorporators of the plaintiff corporation and its vice president, in July, 1924, negotiated for a certain refining plant at that time held in title by Charles F. Noble Oil & Gas Company and Mr. J. B. Dudley. These negotiations started some six months after the incorporation of the plaintiff in the state of Delaware. It appears that Mr. Hagerman, on behalf of the plaintiff, conducted the negotiations for the purchase of said property through the defendant R. M. Shaw, who was then acting as the agent of the said Noble Oil & Gas Company. There is evidence to the effect that Mr. Shaw's agency of the Noble Oil & Gas Company expired, and that he was then employed by Mr. Hagerman and sent as his agent from Oklahoma City to Tulsa to obtain a new option or contract on the Noble refinery for the plaintiff, Red Seal Refining Corporation. It further appears that Mr. Shaw, while acting as Mr. Hagerman's agent, and at his expense, took the option from J. B. Dudley, then title holder, but took it in his own name, for the reason, it appears, that the plaintiff at the time had no right to do business in this state, and that the plaintiff made a $2,500 part payment on the Noble refinery at that time through the defendant Shaw; that Hagerman handed Mr. Shaw the $2,500 and Shaw handed it to Mr. Dudley. This contract bears date of July 15, 1924, and contemplates the conveyance of the property by the owners for a consideration of $70,000 and the execution of certain notes in part payment of the purchase price, which notes were to be deposited in escrow with a quitclaim deed in a bank in Oklahoma City, where the contract was executed. Mr. Shaw later executed an assignment of this contract to the plaintiff corporation.

It further appears that after the consummation of this transaction, the defendant Shaw claimed fees from both parties, and after more or less controversy in respect to this matter of commissions, Mr. Shaw was paid, on September 15, 1924, by the Noble interest, $3,500, and by the plaintiff, Red Seal Refining Corporation, $1,500, this money being paid through Mr. Dudley, for which the defendant Shaw executed a receipt, and on the same day the deed to the plant was delivered by Mr. Dudley to the plaintiff and recorded in the office of the register of deeds. It further appears that on the next day after the defendant Shaw received his fees of $5,000, to wit, September 16, 1924, he filed his articles of incorporation with the Secretary of State of Oklahoma, in which he associated his son and one Gabus under the title of "Red Seal Refining Company," after notice by and protest from the Secretary of State concerning the use of the name. It appears that the defendant Shaw became the president and subscribed for 28 shares of the 30 shares of defendant company, which was capitalized at $3,000. It further appears that the plaintiff corporation completed its attempt to domesticate, initiated, as before stated, in July, 1924, on September 19, 1924, three days after the in-

corporation of defendant R. M. Shaw's Red Seal Refining Company. The plaintiff appointed, on September 19, 1924, its service agent and registered its trade-mark September 18, 1924.

It may be stated at the outset that the authorities generally hold that a foreign corporation may maintain an action in a court of equity to restrain a domestic corporation from infringing its corporate name. Atlas Assurance Co. v. Atlas Insurance Co. (Iowa) 112 N. W. 232; United States L. & H. Co. of Maine v. United States L. &. H. Co. of New York, 181 Fed. 182.

In the case of Celluloid Mfg. Co. v. Cellonite Mfg. Co., 32 Fed. 94, it is said in the opinion:

"First, as to the imitation of the complainant's name. The fact that both are corporate names is of no consequence in this connection. They are the business names by which the parties are known, and are to be dealt with precisely as if they were the names of private firms or partnerships. The defendant's name was of his own choosing, and, if an unlawful imitation of the complainant's, is subject to the same rules of law as if it were the name of an unincorporated firm or company. It is not identical with the complainant's name. That would be too gross an invasion of the complainant's right. Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary unsuspecting customer is obnoxious to the law."

It is contended that the evidence shows that the doing of such business, by which the plaintiff claims a priority of use under its trade name of "Red Seal Refining Corporation," was in violation of the laws of the state of Oklahoma, and that at the time the plaintiff obtained the right to lawfully do business in this state, the defendant was already using the name at its filling station in connection with its business, and hence defendant's lawful use of the name was first in time and that plaintiff is an interloper and not entitled to any relief.

Two decisions of this court: Myatt v. Ponca City Land & Improvement Co., 14 Okla. 189, 78 Pac. 185, and Lafferty v. Evans, 17 Okla. 247, 87 Pac. 304, are cited in support of defendants' proposition.

In the Myatt Case, supra, the charter was issued by the state of Kansas for the sole purpose of buying and selling real estate in Oklahoma Territory. The charter granted no-right within the state of Kansas. In the opinion it is said:

"Corporations are created for some purpose other than the mere exercise of creative power, and consequently when a corporation is attempted to be created without giving to it any power to act in the state of its creation, it can exercise none in any foreign country."

The case relied on has, we think, no application to the instant case. In the present case the plaintiff corporation was created by a charter issued by the state of Delaware. An examination of plaintiff's charter incorporated in the record clearly shows it was authorized to do business within the state of Delaware to the same extent and for the same purposes for which it seeks a license within the state of Oklahoma. In other words, the plaintiff corporation was possessed of the right, power, and privilege in the state of its domicile which was granted it in the state of Oklahoma.

The validity of this same Kansas charter involved in the Myatt Case, supra, was again considered in the case of Lafferty v. Evans, supra, cited by defendants. The court followed the same rules announced in the Myatt Case above referred to.

Defendants also cite Land Grant Ry. Co. v. Board of County Commissioners, 6 Kan. 245. The Kansas court held as follows:

"From the only territory in the whole world, over which the state of Pennsylvania has any jurisdiction or control, and in which it could authorize a corporation to have an office, or to do business, it excludes this corporation; that the attempt on the part of the state of Pennsylvania to authorize this corporation to have an office, or to do business anywhere else except in the state of Pennsylvania, is ultra vires, illegal, and void."

In the instant case the state of Delaware had, under its laws, authority to create a corporation within its borders for the purpose of engaging in the oil and gas business. That state issued a charter to the plaintiff corporation for these purposes. The rule in the Kansas case, therefore, has no application in the instant case.

Under the heading of "Tramp corporations and how far rules of comity are applicable thereto," counsel for defendants have cited numerous cases announcing the rules applicable to the facts upon which such cases were decided. After an examination of many of these cases and of extensive quotations from others contained in defendants' brief, we think it sufficient to say that in these cases relied upon by defendants, the corporation had no legal or valid existence

within the state which issued its charter. The corporations involved in these cases had no authority by virtue of their charters to transact or do business within the states which created them. Under such a state of facts the rules announced in the cases cited are unquestioned, but these rules have no application to the facts disclosed by the record before us. In the instant case, under the laws of the state of Delaware, the plaintiff could be created for the very purposes designated in its charter and articles of incorporation. It was a valid and subsisting corporation within the state of Delaware at the time it made application for license to do business within the state of Oklahoma. It is this fact which clearly distinguishes the plaintiff corporation from any of those involved in many of the cases cited by defendants in their brief.

Defendants stress the fact that all of the acts of the plaintiff corporation with reference to conducting its business in Oklahoma were done before it was incorporated in this state. Whatever force there may be in defendants' proposition, when applied to one who, in good faith, without actual knowledge of facts and circumstances connected with the plaintiff corporation's attempt to comply with the foreign corporation laws of this state, it has, in our opinion, no application to a case such as is presented by the record before us. The evidence clearly shows that when the defendants selected their name "Red Seal Refining Company," they did so with full knowledge of the fact that plaintiff had already adopted its name of "Red Seal Refining Corporation"; that it was maintaining an office in New York under its name, and was carrying on its business, both in Arkansas and Oklahoma, under the same name, and in good faith had attempted domestication in this state in July, 1924; that the defendant Shaw incorporated his company in the name of his former employer and was fully informed of the purpose of the plaintiff, Red Seal Refining Corporation, to engage in business in Oklahoma, and that it had invested large sums of money in the state for that purpose. The defendants were free to take any unappropriated name they might choose, but they elected to take plaintiff's name, or one so similar to it as to mislead and deceive those having business relations with the plaintiff, Red Seal Refining Corporation.

Many decisions have announced the rule that the principle upon which the cases on this subject proceed is not that there is property in the trade name, but that it is a fraud on a person who has established a

trade and carries it on under a given name, that some other person should assume the same name or the same name with a slight alteration in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name. Pettis v. American Watchman's Clock Co., 89 App. Div. (N. Y.) 345.

It is further contended in defendants' brief that the courts of this state were not open to plaintiff at the time this action was instituted. It is argued that upon the facts existing in this case, as shown by the evidence. the plaintiff was doing business in violation of the laws of this state up to October 1, 1924, and after it commenced this action. It appears from the evidence that it was on the date October 1, 1924, eleven days after plaintiff's domestication in this state, that plaintiff's annual corporation license fees were paid. At the time this action was filed plaintiff had complied with all the laws of this state except that it had not paid its license fees as provided in section 9946, C. S. 1921, which was complied with within a few days after plaintiff's domestication, and, under the decisions of this court, noncompliance with this section does not prohibit plaintiff from enforcing contracts or other rights in the courts of this state. Joiner v. Ardmore Loan & Trust Co., 33 Okla. 266, 124 Pac. 1073; Maston v. Glen Lumber Co., 65 Okla. 80, 163 Pac. 128; Dolese Bros. Co. v. Pacific Engineering & Construction Co.. 95 Okla. 72, 218 Pac. 798.

In the last case cited, it is said in the third paragraph of the syllabus:

"Where a corporation has complied with all requirements of the Constitution and statutes relative to filing copies of charter and articles of incorporation, but has failed to report and pay its license tax as required by chap. 57, Sess. Laws 1910 (sec. 9946, C. S. 1921), its contracts, while in such default, are not void nor is the right to proceed in court to enforce them to be denied."

In General Film Co. of Missouri v. General Film Co. of Maine, 237 Fed. 64, it is said in the first paragraph of the syllabus:

"Only the state can take advantage of the failure of the corporation doing business therein to comply with the local laws regarding licensing. etc., and another corporation cannot, on that ground, appropriate the foreign corporation's name and pirate its business."

This is a case of purely equitable cognizance, and a careful examination of the evidence leads to the conclusion that the defendants appropriated the trade name of the

plaintiff, thereby securing an unfair advantage and which resulted in the confusion and annoyance of the plaintiff to its injury. It may be observed that no injunction was issued against the defendant company, or any of the defendants, from carrying on their business under any name they desired provided they did not appropriate the name "Red Seal Refining Company," or any name similar thereto.

We think the judgment of the trial court should be affirmed.

By the Court: It is so ordered.

Note.—See under (1) 14 C. J. p. 333, §402; 7 R. C. L. p. 135. (2) 14a C. J. 1293, §4000 (Anno).