**HULBURT OIL & GREASE COMPANY,**
a Pennsylvania corporation, Plaintiff-
Appellee,

v.

**HULBURT OIL & GREASE COMPANY,**
an Illinois corporation, Defendant-
Appellant.

No. 15590.

United States Court of Appeals
Seventh Circuit.

Dec. 19, 1966.

Bayard M. Graf, Philadelphia, Pa., Donald W. Garlinger, Chicago, Ill., J. Willison Smith, Jr., Philadelphia, Pa., for defendant-appellant, Hinshaw, Culbertson, Moelmann, & Hoban, Chicago, Ill., of counsel.

Norman A. Miller, John R. Caffrey, Chicago, Ill., Fred C. Aldridge, Jr., Philadelphia, Pa., Jacob T. Pincus, Chicago, Ill., for plaintiff-appellee, Clausen, Hirsh, Miller & Gorman, Chicago, Ill., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., of counsel.

Before KNOCH, SWYGERT and FAIRCHILD, Circuit Judges.

SWYGERT, Circuit Judge.

The Hulburt Oil and Grease Company, a Pennsylvania corporation, brought this diversity action for unfair competition against the defendant, an Illinois corporation, to determine the defendant's

right to use the name "Hulburt Oil and Grease Company" in Illinois. The defendant appeals from a judgment of the district court directing the defendant to change its corporate name, permanently enjoining the defendant from using a name so similar to the plaintiff's name that confusion is likely to result, and awarding compensatory damages to the plaintiff in the amount of $35,562.91 and punitive damages of one dollar.[1] The principal question is whether the plaintiff is barred from maintaining this action by Ill.Rev.Stat. ch. 32, § 157.125 (1965) as a foreign corporation transacting business in Illinois without a certificate of authority.

The facts found by the district court, sitting without a jury, are attacked generally by the defendant as unsupported conclusions and are challenged specifically in a few instances as contrary to the evidence. Our review of the record exposes none of these findings as clearly erroneous and it will not be necessary to discuss any of them extensively.

The plaintiff corporation was organized in Pennsylvania in 1910 as "C. Hulburt & Company," succeeding to a business which dates back to 1861. It has been engaged in the manufacture and sale of lubricating oils and similar products under the name "Hulburt Oil and Grease Company" since 1918. During this time the plaintiff has expended substantial sums of money promoting its corporate and trade name in several states including Illinois, and its name has become well known and of considerable value. The plaintiff has been doing business in Illinois for many years, although until just prior to this lawsuit it did not attempt to qualify under the Illinois Business Corporation Act as a foreign corporation authorized to transact business within the state. In 1963, the plain-

tiff acquired and began operating a plant in Benton, Illinois.

John R. Michael became a minority stockholder and the general manager of the plaintiff in 1920. In his capacity as general manager, a director, and the holder of a variety of corporate offices, he effectively ran the company for many years. In 1955 his son David succeeded him as general manager, but John R. Michael remained in the company's employment by virtue of certain consulting agreements and retained substantial influence in its everyday affairs.

On several occasions during his tenure with the plaintiff, including at least one occasion while he was the plaintiff's general manager and again in 1963 when the plaintiff purchased its Benton plant, John R. Michael was informed of the necessity of qualifying the corporation to do business in Illinois. Although his position was such that it became his duty to take the necessary action to protect the plaintiff's interests, Michael did nothing.

Early in 1964, for reasons which are not relevant here, a general misunderstanding arose between John and David Michael and the majority stockholders of the plaintiff, Anna and W. Stuart Emmons. On April 9, 1964, following heated negotiations, the Michaels,[2] the Emmonses, and the plaintiff entered into a settlement agreement. The agreement envisioned the sale of the Michaels' stock to the plaintiff, and the further execution of a settlement contract providing for the termination of the Michaels' employment with the plaintiff and a general release of all claims among the parties. The sale of stock was consummated and the settlement contract executed on May 7, 1964. The settlement contract, among other things, terminated the most recent consulting agreement under which John

<hr>

1. In an earlier appeal we held that the issuance of a temporary injunction restraining the defendant from using the plaintiff's name pending final determination of the matter was within the discretion of the district court. Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co., 346 F.2d 260 (7th Cir.), cert. denied, 382 U.S. 835, 86 S.Ct. 78, 15 L.Ed.2d 77 (1965).

2. John R. Michael and his sons David and J. Graham, all of whom owned stock in the plaintiff.

R. Michael had been employed, contained the general release called for in the settlement agreement, and provided that the Michaels were free to compete with the Emmonses and the plaintiff "in any lawful manner in their sole discretion deemed appropriate."

In the meantime, during the last week of April 1964, while still in the plaintiff's employ, John R. Michael prompted his attorney to seek the assistance of the C-T Corporation System in "determining" whether the name "Hulburt Oil and Grease Company" was available for incorporation in a number of states, including Illinois. On May 4, 1964, the name was reserved in Illinois. Subsequently, on May 21, 1964, two weeks after the execution of the settlement contract, John R. Michael caused the incorporation of the defendant and became its sole shareholder. His actions in reserving the defendant's name and incorporating the defendant were taken clandestinely and without the knowledge of the plaintiff. The district court found that he acted maliciously and intentionally to prevent the plaintiff from qualifying to do business as a foreign corporation in Illinois and to take the plaintiff's name for himself.

In June 1964 the officers of the plaintiff learned that the plaintiff was not qualified in Illinois and applied to the Secretary of State for a certificate of authority. The application was rejected solely by reason of the existence of the defendant. This suit followed.

The defendant's principal contention is that the law of Illinois prohibits the plaintiff from maintaining this action. The plaintiff has admittedly been doing business in Illinois for many years without a certificate of authority and has been unable to obtain one because of the incorporation of the defendant.[3] Ill.Rev. Stat. ch. 32, § 157.125 (1965) provides in part:

No foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain an action at law or in equity in any court of this State, until such corporation shall have obtained a certificate of authority. * * *

Although the Illinois courts have enforced the predecessor of this provision in other contexts, e. g., Indiana Harbor Belt R. R. v. Green, 289 Ill. 81, 124 N.E. 298 (1919); J. Walter Thompson Co. v. Whitehed, 185 Ill. 454, 56 N.E. 1106 (1900), no Illinois decisions appear to have considered the statute in relation to the question presented by the facts in this case. The defendant argues that the statute is conclusive and that the unavailability of any remedy to the plaintiff is the result of the plaintiff's illegal activity in Illinois. He relies upon Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill. 494, 30 N.E. 339 (1892), and a statement by this court in General Industries Co. v. 20 Wacker Drive Bldg. Corp., 156 F.2d 474 (7th Cir.), cert. denied, 329 U.S. 792, 67 S.Ct. 370, 91 L.Ed. 678 (1946), to support his view, even though neither of these cases was concerned with the statute quoted.

The defendant's reliance upon *Hazelton* is misplaced. In that case the Illinois Supreme Court, without referring to any statute, asserted the legally unsound proposition that a foreign corporation (present in Illinois "only by a species of legal sufferance") could not contest the right of a domestic corporation to the corporate name given to the domestic corporation by the state, because in "bestowing" a name upon a domestic corporation Illinois was exercising its "sovereignty" and stating its "public policy." Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill. at 505, 30 N.E. 339. Insofar as *Hazelton* stands for this proposition, it has been uniformly rejected. E. g., Radio Shack Corp. v. Radio Shack, Inc., 180 F.2d 200 (7th Cir. 1950); Peck Bros. v. Peck Bros., 113 F. 291 (7th Cir.), cert. denied, 187 U.S. 643, 23 S.Ct. 843, 47 L.Ed. 346 (1902); Metropolitan Opera Ass'n v. Metropolitan Opera Ass'n, 81 F.Supp. 127 (N.D.Ill.1948); United States Light & Heating Co. of Maine v.

3. Ill.Rev.Stat. ch. 32, § 157.9 (1965).

254

United States Light & Heating Co. of New York, 181 F. 182 (S.D.N.Y.1910).

It can no longer be argued that in allowing incorporation under its laws, a state thereby intends to license the commission of what would otherwise be a tortious act. In other words, a state does not pass upon the legality of a corporate name by merely permitting incorporation under that name.[4] The "sovereignty" and "public policy" rationale of *Hazelton* was implicitly rejected in International Comm. of YWCA v. YWCA, 194 Ill. 194, 62 N.E. 551 (1901), when the Illinois Supreme Court approved the issuance of an injunction restraining a domestic corporation from using the name under which it was incorporated.

While Illinois manifestly has not determined the legality of the defendant's use of the name "Hulburt Oil and Grease Company" by permitting the defendant to incorporate, this is not to say that Illinois may not close its courts to suits by foreign corporations which have been doing business in Illinois contrary to state law. This court recognized that Illinois has the power to do so in the *General Industries* case when we stated:

> [T]he State of Illinois may deny to a foreign corporation the right to sue in its courts to enjoin a domestic corporation from using a name similar to that of the foreign corporation where such foreign corporation has not complied with the statute of Illinois which permits such corporation to do business in

the State. General Industries v. 20 Wacker Drive Bldg. Corp., supra, 156 F.2d at 476.

Unfortunately, we there relied upon *Hazelton* in assuming that Illinois has exercised the power of exclusion ascribed to it.[5] But since *Hazelton* has been discredited as authority for this assumption, we must consider whether the Illinois courts would presently entertain this suit.

■ Section 125 of the Illinois Business Corporation Act provides that a foreign corporation illegally doing business within the state may not avail itself of the Illinois courts "until such corporation shall have obtained a certificate of authority." This language contemplates that the foreign corporation will be able to correct its previous noncompliance with Illinois law by qualifying with the Secretary of State. Emcee Corp. v. George, 293 Ill.App. 240, 12 N.E.2d 333 (1937). In this case such action has been rendered impossible by the unlawful act of incorporating the defendant. In addition, John R. Michael, who reserved the name "Hulburt Oil & Grease Company" in Illinois for the defendant while still employed by the plaintiff and who later caused the defendant's incorporation and became its sole shareholder, was the same person who was charged with the duty of qualifying the plaintiff in Illinois during his employment with the plaintiff. To hold that the defendant may nevertheless invoke the statute to deny the plaintiff

4. In Peck Bros. v. Peck Bros., 113 F. 291, 300 (7th Cir.), cert. denied, 187 U.S. 643, 23 S.Ct. 843, 47 L.Ed. 346 (1902), this court stated:

The act of sovereignty allowing incorporation is permissive, not mandatory. It sanctions the act of incorporation under the name and for the business proposed, if that name and that business is otherwise lawful. The sovereign by the act of incorporation adjudges neither the legality of the business proposed, nor the name assumed. That is matter for judicial determination by a court having jurisdiction of the subject when the legality of the business or of the name is called in question.

5. The foreign corporation in General Industries Co. v. 20 Wacker Drive Bldg. Corp., 156 F.2d 474 (7th Cir.), cert. denied, 329 U.S. 792, 67 S.Ct. 370, 91 L.Ed. 678 (1946), was allowed to sue the domestic corporation in a federal court even though we assumed that the state courts would have been inaccessible to it. This dichotomy, of course, is no longer permissible. If Illinois has chosen to exclude entirely from its courts foreign corporations illegally doing business there, we are similarly bound to exclude them from the federal courts in diversity cases. Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

any remedy would be to permit the consummation of a fraud and a breach of trust of a sort which the statute was surely not designed to countenance. We think that the Illinois courts, in keeping with their consistent adherence to basic equitable principles even in the absence of a specifically authorized remedy, Skelly Oil Co. v. Universal Oil Products Co., 338 Ill.App. 79, 86 N.E.2d 875 (1949), would not permit the defendant to raise the statute as a bar to the plaintiff's action. Emcee Corp. v. George, supra.

Our conclusion is supported by several decisions of other courts in closely analogous situations. Scalise v. National Utility Service, Inc., 120 F.2d 938 (5th Cir. 1941); General Film Co. of Missouri v. General Film Co. of Maine, 237 F. 64 (8th Cir. 1916); Western Auto Supply Co. v. Western Auto Supply Co., 13 F. Supp. 525 (D.N.H.1936); Red Seal Refining Co. v. Red Seal Refining Corp., 115 Okl. 63, 241 P. 762 (1925). In each of these cases, a foreign corporation was permitted to challenge the name of the domestic corporation despite having done business in the state without being properly qualified.

In General Film Co. of Missouri v. General Film Co. of Maine, supra, for example, the defendant was a Maine corporation which had been engaged in the business of producing and selling motion picture films in Missouri without procuring a license required by Missouri law.[6] Upon discovering this fact, several citizens of Missouri, who were engaged in a similar business, incorporated the plaintiff in Missouri under the same name and brought suit to enjoin the defendant from using the plaintiff's name and from doing business within the state. The defendant filed a counterclaim asserting the fraudulent creation of the plaintiff and requesting an injunction against the use of its name by the plaintiff. In affirming a decree granting the relief requested by the foreign corpora-

tion, the Eighth Circuit refused to permit the domestic corporation to defend itself on the ground that the defendant was doing business illegally in Missouri. The court stated:

[Missouri] alone could complain of the fact that the General Film Company of Maine was doing business in the state without having complied with the statutes in regard to foreign corporations. The plaintiff cannot clothe itself in the panoply of the state as a shield for the fraud which it is seeking to accomplish.

\* \* \* \* \* \*

A corporation chooses its own name. It does it with a view to the business in which it is presently to engage. It is therefore charged with the duty of not selecting a name for fraudulent purposes. It is the duty of courts of equity to enforce the observance of this rule. 237 F. at 66.

The facts in Scalise v. National Utility Service, Inc., supra, are also similar to those in the present case. There the plaintiff was a New York corporation which was doing business in Florida without the required permit. The plaintiff began an action in the state courts on business transactions it had entered with certain defendants, but the defendants successfully invoked a Florida statute which provided for the abatement of any action brought by a nonqualified foreign corporation pending its qualification. Before the plaintiff was able to qualify, however, the defendants formed a Florida corporation of the same name to prevent the plaintiff from obtaining a permit. The plaintiff sought an injunction in the federal district court to restrain the defendants and their corporation from using the plaintiff's name. As one of their defenses, the defendants contended that the plaintiff's name was available in Florida for use by anyone because of the plaintiff's own illegal action in doing business there without a permit. The court rejected this defense

6. A Missouri statute also provided that such a foreign corporation could not maintain a suit on any contract entered in the state during the period of noncompliance with Missouri law.

**256**

and granted the injunction sought. The Fifth Circuit, in affirming, stated:

█t is a wrongful act to organize a domestic corporation by the same name as that already known to be used in the state by a foreign corporation, although the foreign corporation is not domesticated, but is doing business, in the state without a permit, and an injunction will issue, not merely after the charter has been obtained to prevent the use of the name in unfair competition, but to restrain the procuring or issuing of the charter under the proposed name or if the charter has been issued, to restrain the use of the name. 120 F.2d at 940.

We think that the broad principle underlying the decisions in the *Scalise, General Film,* and other cases cited herein—the prevention of fraud—would find favor with the courts of Illinois in this case, and we therefore hold that the district court properly determined that the plaintiff's action is not barred by section 125 of the Illinois Business Corporation Act.

█ The defendant contends that since part of the relief requested by the plaintiff was a mandatory injunction requiring the defendant to change its name, the officers, directors, and the shareholder of the defendant and the Illinois Secretary of State were indispensable parties to the lawsuit. This contention is without merit. E. g., Mansfield Hardwood Lumber Co. v. Johnson, 263 F.2d 748 (5th Cir.), cert. denied, 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959); Hertz v. Record Publishing Co., 219 F.2d 397 (3d Cir.), cert. denied, 349 U.S. 912, 75 S.Ct. 601, 99 L.Ed. 1247 (1955).

█ The defendant also contends that the district court erred in awarding damages measured by the attorneys' fees and costs incurred by the plaintiff in prosecuting this case. The defendant says that since it transacted no business in Illinois it was not guilty of unfair competition and any award of damages is unjustified. We do not agree. The ap-

propriation of the plaintiff's name by the incorporation of the defendant under circumstances likely to cause confusion in the trade and to the public was itself sufficient to constitute unfair competition, Independent Nail & Packing Co. v. Stronghold Screw Products, Inc., 205 F. 2d 921, 926 (7th Cir.), cert. denied, 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391 (1953), and, because the action taken was intentional, vexatious, and fraudulent the award of the expenses of litigation was proper. Wolfe v. National Lead Co., 272 F.2d 867, 873 (9th Cir. 1959), cert. denied, 362 U.S. 950, 80 S.Ct. 860, 4 L.Ed. 2d 868 (1960); National Van Lines v. Dean, 237 F.2d 688, 694 (9th Cir. 1956); Aladdin Mfg. Co. v. Mantle Lamp Co., 116 F.2d 708, 717 (7th Cir. 1941).

The judgment is affirmed.