J. D. SIMMONS, INC. and Capital Car Care, Inc., Plaintiffs,

v.

ALLIANCE CORPORATION, Acker Industries, Inc. and Eric O. Acker, Vincent V. Messer, Western Bank and Office Supply Company, Tom M. Braun, Ernest Nikkell, and Robert Webb, Defendants.

No. CIV–77–0338–T.

United States District Court,
W. D. Oklahoma.

March 31, 1978.

As Amended April 18, 1978.

On Motion to Dismiss July 28, 1978.

Jack R. Lawrence, Oklahoma City, Okl., for plaintiffs.

Eugene Mathews, Herbert F. Hewett, Ronald E. Stakem of Fagin, Hewett, Mathews & Fagin, Oklahoma City, Okl., for defendants.

ORDER

RALPH G. THOMPSON, District Judge.

This is an action for violation of the federal securities laws in which both parties have moved for summary judgment. Rather than set out the facts, pleadings, and arguments presented on this case, the Court will confine itself to the threshold question, presented by plaintiff's Motion to Strike Defendant's Motion to Dismiss or in the alternative for Summary Judgment. Briefly stated, the question before the Court in this order is whether the failure to pay the corporate franchise tax and resulting corporate suspension prevents a corporation from defending in a suit filed against it, once the corporation has been reinstated.

Defendant Alliance Corporation (Alliance) had its corporate charter suspended on February 25, 1973, for failure to pay its franchise tax as required by 68 O.S.1971, § 1203. Alliance failed to correct this situation until October 6, 1977, after its Motion to Dismiss or in the alternative for Summary Judgment had been filed and shortly after plaintiff's Motion to Strike.

O.S.1971, § 1212(c) provides that the corporate charter may be suspended upon failure to pay the franchise tax and that upon suspension "any corporation . . . shall be denied the right to sue or defend in any court of this State, except in a suit to forfeit the charter . . .". Plaintiffs contend that by virtue of this provision, defendant's Motion to Dismiss or in the alternative for Summary Judgment is an improper attempt to "defend", plaintiffs are entitled to judgment against Alliance and all other defendants as a matter of law, and that the subsequent reinstatement of

Alliance by the Secretary of State is of no effect.

Plaintiffs' Motion to Strike must be overruled. 68 O.S. § 1212 has, as its primary purpose, the raising of revenue. The most recent construction of section 1212(c) by the Oklahoma Supreme Court is in *Midvale Min. & Mfg. Co. v. Dutron Corp.,* 569 P.2d 442, 443 (Okl.1977), wherein the Court stated:

"Failure to pay franchise taxes is an issue between the corporation and the State because franchise tax statutes are solely for revenue-raising purposes."

That this is the purpose of the franchise tax is expressly declared by the legislature in 68 O.S.1971 § 1208(a). Once the taxes have been paid and the corporation reinstated, the purpose behind section 1212 has been met and no further penalty should be imposed.

The overwhelming majority of jurisdictions have held that where a regulatory statute provides as a penalty for failure to comply with its terms that the delinquent corporation is unable to defend a suit against it, compliance by the corporation after suit is instituted will be sufficient to remove the statutory bar to defense. (See Annot., Corporations—Access to Courts, 6 A.L.R.3d 326 (1966), and cases collected therein.)

While Oklahoma has never passed on this precise issue, the revival of the corporate charter of corporate *plaintiffs* has been held sufficient to allow the maintenance of suit on an action arising before reinstatement. *Fortinberry Co. v. Blundell,* 206 Okl. 261, 242 P.2d 427 (1952); *Red Seal Refining Co. v. Red Seal Refining Corp.,* 115 Okl. 63, 241 P. 762 (1925). If a revived corporation may sue as plaintiff, there appears to be no bar to its defending suit, as well. See also Note: "Corporate Official's Liability for Debts Incurred in Name of Corporation while Charter is Suspended," 28 Okl.L.Rev. 828 (1975).

Plaintiffs rely heavily on *R. V. McGinnis Theatres & Pay T.V., Inc. v. Video Independent Theatres, Inc.,* 386 F.2d 592 (10th Cir. 1967), cert. denied, 390 U.S. 1014, 88 S.Ct. 1265, 20 L.Ed.2d 163 (1968), for the proposition that Alliance may not defend. Since the decision of this case, the Oklahoma legislature has acted to remove the *automatic revocation* of a corporate charter for failure to pay franchise tax, which was in effect at the time of this decision. The present penalty for failure to pay is suspension only, and a corporation has the right to reinstate itself at any time before its Articles of Incorporation expire. As *R. V. McGinnis,* supra, relied on an entirely different statutory scheme for its decision, it is not relevant to the case at hand.

Furthermore, the construction of section 1212(c) which plaintiffs urge the Court to adopt would result in manifest injustice in many instances. Suspension of a corporation for failure to pay its corporate franchise tax would result in default judgment against it in any suit filed against it during its suspension. It takes little imagination to foresee the inequitable and even absurd results this would dictate. The purpose of section 1212(c) is to raise revenue, and once the taxes are paid, the purpose is fulfilled.

The Court therefore holds that Alliance, having paid its back taxes and being once again a corporation in good standing (as evidenced by a Certificate of Good Standing issued by the Secretary of State and attached as Exhibit 3 to defendant's response brief), may properly defend plaintiffs' suit against it. Having announced this conclusion, the Court need not reach plaintiffs' argument that the other defendants are also barred from any defense, as, of course, if Alliance can defend, all other defendants can, as well. While section 1212(c) may not be used to prohibit defendants from defending this suit, it may well affect other issues in this lawsuit, as apparently Alliance was under suspension when the cause of action arose. The Court in its order today holds only that section 1212(c) does not prohibit Alliance from defending a suit filed against it while it was suspended once it has been properly reinstated. No intimation of the effect of section 1212(c) on other issues which are or may be raised is intended.

For the reasons stated in the above discussion, plaintiffs' Motion for Summary Judgment is denied. Plaintiffs' Motion to Strike defendant's alternative Motions to Dismiss or for Summary Judgment is denied. Plaintiffs have requested additional time, should their motions be denied, to respond to defendant's motion. As provided in Rule 12(a), Federal Rules of Civil Procedure, plaintiffs are hereby given ten (10) days from receipt of this order to respond to defendant's Motion to Dismiss or for Summary Judgment.

## ON MOTION TO DISMISS

■ This action, for damages resulting from an allegedly fraudulent securities transaction, is presently before the Court on defendants' Motion to Dismiss, or in the alternative, for Summary Judgment. The Court, having considered the pleadings and briefs of the parties, has concluded that the Motion to Dismiss should be granted, as hereinafter explained.

Plaintiffs' complaint alleges jurisdiction under 15 U.S.C. § 78aa,[1] and alleges violations of the Securities Act of 1933, §§ 12 and 17(a), 15 U.S.C. §§ 77*l*, 77q; the Securities and Exchange Act of 1934, §§ 10 and 14(e), 15 U.S.C. §§ 78j, 78n; and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5. Claims arising under state law are also alleged, over which plaintiffs aver the Court to have pendant jurisdiction.

Plaintiffs in this action are J. D. Simmons, Inc. and Capital Car Care, Inc., Oklahoma corporations. The complaint alleges that these plaintiffs, or their predecessors, owned common stock in Alliance at all times relevant hereto.

Defendants are Alliance Corporation, an Oklahoma corporation; Acker Industries, Inc. (Acker, Inc.); Western Bank and Office Supply Company (Wesbanco); and Eric O. Acker, president of Acker, Inc. and an officer and director of Alliance; Vincent Messer, president of Wesbanco, and an officer and director of Alliance; and Tom M. Braun, Ernest Nikkell, and Robert Webb, directors of Alliance.

Plaintiffs' complaint alleges that on February 19, 1974, defendant Alliance Corporation sent out a notice of special meeting of stockholders to be held February 25, 1974, together with a proxy statement and proxy solicitation materials. Plaintiffs allege these proxy materials omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading.

Two assets held by Alliance before the shareholders meeting were common stock in Acker, Inc. and Wesbanco. Each holding was a major asset of Alliance and represented control of the respective companies. Plaintiffs allege that these holdings represented all or substantially all of Alliance's assets on February 19, 1974. On this date, the proxy materials mentioned above were sent to all stockholders of record (while there is a material dispute as to whether plaintiffs received these materials or were sent them, this fact is not necessary to the Court's decision today). The proxy materials contained a proposal by Alliance to sell its holdings in Acker, Inc. and Wesbanco to those respective corporations, in return for their assumption of Alliance's obligations, incurred on behalf of the two corporations, and upon the execution of a convertible debenture by Acker, Inc. in the amount of $100,000, carrying interest at five percent.

The notice to stockholders mailed on February 19, 1974, (a copy of which is attached to plaintiff's complaint) described the transaction as follows:

" * * *

2. Vote on the recommendation of the Board of Directors at a Special Directors' Meeting held February 13, at which time the following Proposals were approved:

---

1. Although the complaint omits any reference to 15 U.S.C. § 77v, which gives the Court jurisdiction over claims under the 1933 Act, the Court recognizes that this omission is easily curable and has reached the merits of the jurisdictional defenses under both the 1933 and 1934 Acts.

(A) Proposal of Acker Industries, Inc. and Eric O. Acker to issue $100,000 in 5% 20 year convertible Debentures, plus assuming various debts and obligations of Alliance Corporation in exchange for all the remaining shares of Acker owned by Alliance.

(B) Proposal of Vincent V. Messer and Associates to forgive debts of Alliance now due Wesbanco, and Messer and his Associates, plus assuming various debts and obligations of Alliance, in exchange for all the shares of Wesbanco owned by Alliance but presently pledged to Messer and his Associates for their loans to Wesbanco.

* * * "

On February 25, this plan was approved by the shareholders. Plaintiffs allege that this transaction is fraudulent in several particulars.

Much of plaintiffs' complaint states claims for relief arising under state law. Interspersed throughout the complaint are claimed violations of federal law, not specified except by reference to the jurisdictional paragraph. Basically, the complaint alleges claims stemming from two transactions—the meeting of February 25, 1974, and proxy solicitation prior thereto; and the solicitation by Alliance to purchase its shares in 1976. The first transaction is the subject of plaintiffs' counts I–III, which allege fraud because the proxy solicitation cards contained false and misleading statements and omissions and because plaintiffs were not given notice of the meeting. Plaintiffs further allege a breach of fiduciary duty and corporate mismanagement on the part of defendants. Plaintiffs' Count IV alleges that Alliance is currently attempting to buy back its stock at ten cents a share, an action plaintiffs contend is fraudulent in itself in that it is being undertaken for the sole purpose of concealing the fraud previously alleged, and that the solicitation is made through untrue and misleading statements.

The complaint alleges violations of sections 12 and 17(a) of the Securities Act of 1933, and sections 10 and 14(e) of the Securities and Exchange Act of 1934, along with Rule 10b–5. Plaintiffs have since conceded that they have no claim for relief under section 14(e), as Alliance is not subject to registration pursuant to section 12 of the Act, a necessary prerequisite to relief under section 14. The remaining sections provide no remedy for plaintiffs as they are neither purchasers nor sellers.

An examination of plaintiffs' complaint reveals that plaintiffs nowhere allege that they purchased securities, a requirement for relief under sections 12 and 17(a) of the 1933 Act. Section 12 provides, in part, that one who offers or sells a security by means of a fraudulent prospectus or oral communication ". . . shall be liable to the person purchasing such security from him. . . ." Only a *purchaser* may recover under this section. *Greater Iowa Corp. v. McLendon,* 378 F.2d 783 (8th Cir.1967); *Davidge v. White,* 377 F.Supp. 1084 (S.D.N.Y. 1974); *Duffy v. Ranger Securities Corp.,* 346 F.Supp. 1401 (E.D.N.Y.1972). Assuming that section 17(a) authorizes a private right of action, which question the Court does not reach in the ruling announced today, only a *purchaser* may recover. *Kellman v. ICS, Inc.,* 447 F.2d 1305 (6th Cir. 1971); *Greater Iowa Corp. v. McLendon, supra.*

Likewise, a suit brought pursuant to section 10(b) and Rule 10b–5 requires that plaintiff either purchased or sold securities. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir. 1952), cert. denied 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Plaintiffs herein purchased no stock. The Alliance stock which they held prior to the February 25th meeting was exactly the same as that held afterward. The stockholders neither purchased nor sold anything—the assets of the corporation in which they held stock merely changed character. Plaintiffs' situation is closely akin to the third of the "[t]hree principal classes of potential plaintiffs [which] are presently barred by the *Birnbaum* rule", defined in *Blue Chip Stamps v. Manor Drug Stores,*

supra, 421 U.S. at 738, 95 S.Ct. at 1926, as "shareholders, creditors, and perhaps others related to an issuer who suffered loss and the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b–5." Such plaintiffs may be able to circumvent the *Birnbaum* rule by suing derivatively on behalf of the corporate purchaser or seller, but plaintiffs herein have not pursued this remedy, and it is clear, after *Blue Chip Stamps,* that persons who are not purchasers or sellers, such as these plaintiffs, have no standing to sue under Rule 10b–5.

Plaintiffs have urged that the application of Securities and Exchange Commission Rule 145 (17 C.F.R. § 230.145), which defines "offer", "offer to sell", "offer for sale", or "sale" of securities in certain situations, would result in the transaction here in question being a "sale" within the meaning of Rule 145, and thus it should be considered a "sale" for purposes of the anti-fraud statutes. Rule 145 denies transactions which are subject to the registration requirements of section 5 of the Act, and assuming, arguendo, that Rule 145 has any relevance to the facts at hand, the transaction complained of herein is not encompassed by the definition found in Rule 145. Furthermore, the fact that this transaction might constitute a "sale" does not elevate plaintiffs to either purchaser or seller status, without which their lawsuit must fail.

The second transaction of which plaintiffs complain is the attempt on the part of Alliance and other defendants to buy the outstanding shares in Alliance. Plaintiffs do not allege that they have sold their shares or bought any, or that an offer to sell has been extended to them. As discussed above, plaintiffs must have purchased or sold securities to have standing to sue under the sections allegedly violated. The requisite standing is therefore lacking on all four counts of plaintiffs' complaint and it must be dismissed.

Accordingly, the Court holds that section 14(e), Securities and Exchange Act of 1934, does not provide a remedy for plaintiffs under the facts herein. Section 10(b), Securities and Exchange Act of 1934, and Rule 10b–5 require that plaintiffs be purchasers or sellers, and sections 12 and 17, Securities Act of 1933, required that plaintiffs be purchasers, in order to recover thereunder. As plaintiffs have alleged neither that they purchased nor sold securities in connection with the transactions complained of, defendants' Motion to Dismiss will be granted, plaintiffs having failed to state a claim upon which relief may be granted. The Court has not found it necessary to consider the evidence and exhibits filed on behalf of defendants in support of their motion, and thus has treated this motion as a Motion to Dismiss, rather than one for Summary Judgment. Nor has the Court found it necessary to rule on several defenses raised by defendants, and intends no comment on the merits of either these defenses or plaintiffs' state law claims. Having found that the federal questions upon which plaintiffs' complaint depends for jurisdiction must be dismissed, the Court, in its discretion, likewise dismisses the remainder of plaintiffs' complaint, as the state court is the proper forum for adjudication of claims arising under state law. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment, having been construed herein as a Motion to Dismiss for failure to state a claim upon which relief may be granted, Rule 12(b)(6), Federal Rules of Civil Procedure, is hereby granted.

IT IS ORDERED, ADJUDGED, AND DECREED that plaintiffs' complaint be dismissed.